Ishmael SALAHUD–DIN a/k/a Ismail Saladin, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–05–311–CR.

Court of Appeals of Texas, Corpus Christi–Edinburg.

Nov. 16, 2006.

Patrick J. McGuire, Corpus Christi, for appellant.

Cynthia A. Morales, Asst. Dist. Atty., Carlos Valdez, Nueces County Dist. Atty., Corpus Christi, for state.

Before Chief Justice VALDEZ and Justices YAÑEZ and CASTILLO.

## OPINION

Opinion by Justice CASTILLO.

Ishmael Salahud-din appeals from his convictions on five counts of attempted capital murder, one count of unlawful possession of cocaine with the intent to deliver, and one count of escape. Salahud-din received life sentences for each count of attempted capital murder and escape and a ninety-nine year sentence for the count of cocaine possession. Salahud-din presents two points of error on appeal. We affirm.

### I. Background

On November 16, 2003, Salahud-din was visiting his brother and his brother's fiancee at an apartment complex in Corpus Christi, Texas. Early that morning, his brother and his brother's fiancee got into a loud argument. Officers Philip Blintiff and Brian Crown responded to 911 calls from concerned residents of the apartment complex. When Officers Blintiff and Crown arrived at the apartment complex, Salahud-din was standing outside in the parking lot with his brother and his brother's fiancee. While Officer Crown was speaking with Salahud-din's brother and his fiancee, Officer Blintiff patted down Salahud-din and found on his person a bag containing a small amount of marijuana. He arrested Salahud-din for misdemeanor possession of marijuana and placed him in handcuffs in the back of his police car. Salahud-din managed to pull out of the handcuffs and escape the police car through a rear window. He then ran to his car in the parking lot and retrieved his gun.

Unable to apprehend Salahud-din, Officer Blintiff returned to his police car and called for backup. Officer Jose Smith was the first to arrive on the scene and was almost immediately shot in the face by Salahud-din. Officer Blintiff looked to the general area where Officer Smith had been shot and witnessed Salahud-din standing over Officer Smith. Fearing that Salahud-din was about to murder Officer Smith, Officer Blintiff ran towards Salahud-din and fired two or three shots at him. A gunfight ensued and Officer Blintiff called again for more backup. Officers Israel Carrasco and Pedro Muniz responded to Officer Blintiff's second call and arrived at the scene of the gunfight within minutes. Salahud-din shot Officer Carrasco twice and Officer Blintiff once during the continuing gunfight. Having been awakened by the commotion, Officer Javier Cantu, an off-duty police officer living at the apartment complex, arrived at the scene partially in uniform. After observing Salahud-din lying underneath a car and firing a weapon, Officer Cantu shot him twice in the legs. The police then arrested Salahud-din and searched his car, where they found nearly forty grams of cocaine.

### II. Points of Error

Salahud-din raises two points of error on appeal. His first point of error alleges that the trial court's failure to order a competency hearing or inquiry denied him his due process rights to a fair and impartial trial. His second point of error alleges that both the trial court's jury charge and the indictment omitted an essential element of the offense of attempted capital murder and thereby denied him his due process rights to a fair and impartial trial.

### III. Competency

■ By his first point of error, Salahuddin alleges that the trial court had the duty to conduct a competency hearing outside the presence of the jury based on evidence available during trial, and that its failure to do so violated his due process rights. The State responds that Salahuddin forfeited error because defense counsel did not pursue the issue of competency to stand trial and, regardless, the evidence presented during trial failed to raise the issue.

### A. Standard of Review

■ We review a trial courts failure to conduct a competency inquiry or hearing under an abuse of discretion standard. *Moore v. State*, 999 S.W.2d 385, 393 (Tex. Crim.App.1999). The test for abuse of discretion is:

> not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action. Rather, it is a question of whether the trial court acted without reference to any guiding rules and principles. Another way of stating the test is whether the act was arbitrary or unreasonable. The mere fact that a trial judge may decide a matter within his discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred.

*Montgomery v. State*, 810 S.W.2d 372, 380 (Tex.Crim.App.1990) (en banc) (quoting *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985)).

### B. The Law

■ In both Texas and the federal system, "it has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial." *McDaniel v. State*, 98 S.W.3d 704, 709 (Tex.Crim.App.2003) (quoting *Drope v. Missouri*, 420 U.S. 162, 171–72, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975)). The conviction of an accused person while he is legally incompetent violates due process. *Id.* Thus, to protect a criminal defendant's constitutional rights, a trial court must inquire into the accused's mental competence once the issue is sufficiently raised. *Id.* These due process standards are built into the Texas Code of Criminal Procedure. *Id.; see also* TEX. CODE CRIM. PROC. ANN. art. 46B.001–.171 (Vernon Supp.2006).[1]

Article 46B.003(a) of the code of criminal procedure provides that "[a] person is incompetent to stand trial if the person does not have: (1) sufficient present ability to consult with the person's lawyer with a reasonable degree of rational understanding; or (2) a rational as well as factual understanding of the proceedings against the person." TEX.CODE CRIM. PROC. ANN. art. 46B.003(a) (Vernon Supp.2006). An accused person is presumed competent to stand trial and shall be found competent to stand trial unless proved incompetent by a preponderance of the evidence. TEX.CODE CRIM. PROC. ANN. art. 46B.003(b) (Vernon Supp.2006).

Under the current statutory scheme, either party may suggest by motion, or the

---

1. Former article 46.02 of the code of criminal procedure, upon which Salahud-din relies on appeal, has been repealed and does not apply to proceedings commenced after January 1, 2004. Act of May 14, 2003, 78th Leg., R.S., ch. 35, §§ 15, 16, 2003 Tex. Gen. Laws 57, 72. Because the proceedings in the instant case commenced after January 1, 2004, we refer to article 46B.001–.171.

trial court may suggest on its own motion, that the defendant may be incompetent to stand trial. TEX.CODE CRIM. PROC. ANN. art. 46B.004(a) (Vernon Supp.2006). If evidence suggesting the defendant may be incompetent to stand trial comes to the attention of the court, the court on its own motion shall suggest that the defendant may be incompetent to stand trial. TEX. CODE CRIM. PROC. ANN. art. 46B.004(b) (Vernon Supp.2006). This duty of the court to raise the issue of the defendant's competency continues after the trial on the merits begins. TEX.CODE CRIM. PROC. ANN. art. 46B.005(d) (Vernon Supp.2006). Once the issue of the defendant's competency to stand trial has been sufficiently raised, the court shall determine by "informal inquiry" whether there is some evidence from any source that would support a finding that the defendant may be incompetent to stand trial. TEX.CODE CRIM. PROC. ANN. art. 46B.004(c) (Vernon Supp.2006). If after an informal inquiry the court determines that evidence exists to support a finding of incompetency, the court shall order an examination to determine whether the defendant is incompetent to stand trial in a criminal case. TEX.CODE CRIM. PROC. ANN. art. 46B.005(a) (Vernon Supp.2006).

■ Evidence sufficient to prompt a competency hearing or inquiry must raise a *"bona fide* doubt" in the mind of the trial judge as to the defendant's competency to stand trial; a *bona fide* doubt exists if the evidence indicates recent severe mental illness, or at least moderate mental retardation, or truly bizarre acts by the defendant. *Collier v. State,* 959 S.W.2d 621, 625 (Tex.Crim.App.1997) (en banc) (citing *Mata v. State,* 632 S.W.2d 355, 359 (Tex. Crim.App.1982)). Although the statutory

language in the code of criminal procedure governing competency hearings has recently been amended, several of our sister courts continue to apply the *bona fide* doubt construct when reviewing a trial court's failure to order a competency hearing. *See Walker v. State,* 2006 WL 1350173, 2006 Tex.App. LEXIS 4276 (Tex. App.-Waco May 17, 2006, no pet.) (not designated for publication); *Hernandez v. State,* 2006 WL 893604, 2006 Tex.App. LEXIS 2835 (Tex.App.-Eastland April 6, 2006, no pet.) (not designated for publication); *Ford v. State,* 2006 WL 710946, 2006 Tex.App. LEXIS 2165 (Tex.App.-Dallas Mar. 22, 2006, no pet.) (not designated for publication); *McGowan v. State,* 2006 WL 56105, 2006 Tex.App. LEXIS 286 (Tex. App.-Houston [14th Dist.] Jan. 12, 2006, no pet.) (not designated for publication); *Richardson v. State,* 2005 WL 267708, at *2, 2005 Tex.App. LEXIS 951, at *5 (Tex. App.-Houston [1st Dist.] Feb. 3, 2005, no pet.) (not designated for publication). We do the same today.

### C. Analysis

■ In this case, neither party nor the trial court sufficiently raised the issue of Salahud-din's competency at any time during trial. The only evidence that Salahuddin relies on to raise an alleged *bona fide* doubt as to his competency to stand trial are three *pretrial* psychological examinations ordered by the court.[2] Salahud-din forfeited any purported error with regard to these psychological evaluations because he failed to object to the trial court's proceeding to trial. *McDaniel,* 98 S.W.3d at 711.

---

2. The only psychological evaluation contained in the record does not support a finding of incompetency. In his letter to the trial court, the court-appointed psychiatrist explained that because Salahud-din refused to cooperate with him, he was unable to provide the court with a detailed analysis of his psychological disposition, except to state that "In the brief interaction, his associations appeared to be intact. I did not detect any psychosis."

Moreover, based on our review of the record, none of the evidence available during trial suggests that Salahud-din did not have (1) sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding or (2) a rational as well as factual understanding of the proceedings against him. *See* TEX.CODE CRIM. PROC. art. 46B.003(a) (Vernon Supp. 2006). There is no evidence indicating recent severe mental illness, or at least moderate mental retardation, or truly bizarre acts by Salahud-din. *See Collier*, 959 S.W.2d at 625. Importantly, Salahud-din testified in his own defense at trial. Salahud-din lucidly answered questions from both defense counsel and the State as he attempted to establish self-defense as the justification for his actions. There is nothing plainly irrational about his testimony. Thus, we cannot conclude that the trial court's failure to order a competency hearing during trial constituted an abuse of its discretion. *See Moore*, 999 S.W.2d at 393 (holding that evidence is usually sufficient to create a bona fide doubt if it shows "recent severe mental illness, at least moderate retardation, or truly bizarre acts by the defendant."). Accordingly, we overrule Salahud-din's first point of error.

## IV. Indictment and Jury Charge

### A. Jury Charge

By the first sub-issue of his second point of error, Salahud-din alleges that the jury charge omitted an essential element of the offense of attempted capital murder and thereby denied him his due process rights. In particular, Salahud-din argues that the charge failed to require the jury to find, beyond a reasonable doubt, (1) that the victims were police officers acting in lawful discharge of their duties and (2) that Salahud-din knew the victims were police officers at the time of the offense. *See* TEX. PEN.CODE ANN. § 19.03(a)(1) (Vernon Supp.2006). The State responds that Salahud-din failed to preserve error and that the jury charge, when read as a whole, sufficiently described the offense of attempted capital murder.

### 1. Standard of Review

Salahud-din failed to object to the jury charge at trial and thus did not preserve error. TEX.R.APP. P. 33.1; TEX. CODE CRIM. PROC. art. 36.19 (Vernon 2006). Salahud-din actually did object to a previous jury charge because it did not contain an instruction regarding the lesser-included offense of assault on a peace officer, but he later negotiated a new jury charge with the State which contained instructions regarding self-defense. *See generally Skillern v. State*, 890 S.W.2d 849, 880 (Tex. App.-Austin 1994, pet. ref'd) ("Appellant cannot complain about the charge which the trial court gave at his request.").[3] Absent timely objection at trial, review of a jury charge is limited to fundamental error analysis and, thus, to a determination of whether the defendant's rights were injured to the extent that he was denied a fair trial. *See* TEX.CODE CRIM. PROC. art. 36.19 (Vernon 2006); *see also Jimenez v. State*, 32 S.W.3d 233, 233–34 (Tex.Crim. App.2000); *Almanza v. State*, 686 S.W.2d 157, 172 (Tex.Crim.App.1985); *Ashworth v. State*, 418 S.W.2d 668, 670–71 (Tex.Crim. App.1967). Thus, even though he failed to complain of the new jury charge at trial, Salahud-din may still argue on appeal that

---

3. We are mindful that unobjected-to jury-charge error warrants reversal only when the error results in egregious harm and that the question of whether the defendant has preserved jury-charge error is relevant only if there is a determination that error actually occurred. *See Pickens v. State*, 165 S.W.3d 675, 680 (Tex.Crim.App.2005) (citing *Thomas v. State*, 723 S.W.2d 696, 707 (Tex.Crim.App. 1986)).

the jury charge was fundamentally errone-ous.

### 2. The Law

A jury charge must be viewed as a whole in order to determine the existence of error. *White v. State*, 610 S.W.2d 504, 507 (Tex.Crim.App.1981); *Ybarra v. State*, 890 S.W.2d 98, 106 (Tex.App.-San Antonio 1994); *Cain v. State*, 633 S.W.2d 325, 325 (Tex.App.-Houston [14th Dist.] 1982); *Howard v. State*, 625 S.W.2d 440, 442 (Tex.App.-Houston [14th Dist.] 1981). Review should not be limited to parts of the charge standing alone. *Ybarra*, 890 S.W.2d at 106. When the jury charge taken as a whole sufficiently presents the applicable law and protects the defendant's rights, the judgment resulting therefrom will not be reversed on appeal. *Parker v. State*, 594 S.W.2d 419, 424 (Tex.Crim.App. 1980).

### 3. Analysis

The jury charge in this case tracked the indictment and correctly applied the law to the facts. It adopted the precise language of the penal code and identified the particular theory under which the State prosecuted Salahud-din. It alleged in its application paragraph that Salahud-din had the "specific intent to commit capital murder." It provided in its definitional section that a "person commits a capital murder when a person murders a peace officer who is acting in lawful discharge of an official duty and who the person knows is a peace officer." It further defined "peace officer" to include police officers of an incorporated city or town. The jury charge also provided the definitions drawn directly from the penal code of "criminal attempt" and the *mens rea* elements of "knowingly" and "intentionally." [4] Because the language of the jury charge was sufficient, we overrule Salahud-din's first sub-issue.

Even assuming that the jury charge was erroneous, any harm done to Salahud-din must have been "egregious" to warrant reversal. *See Pickens v. State*, 165 S.W.3d 675, 680 (Tex.Crim.App.2005) (citing *Thomas v. State*, 723 S.W.2d 696, 707 (Tex.Crim.App.1986)). Whenever the accused has claimed fundamental error, including error involving the omission of an entire element from the authorization paragraph, the court reviews not only the entire jury charge, but also the state of the evidence in the case, before deciding whether the error was so harmful as to require reversal. *Almanza*, 686 S.W.2d at 172. The actual degree of harm is to be assayed in light of the entire jury charge, the state of the evidence, including contested issues, and the weight of probative evidence, argument of counsel, and any other relevant information revealed by the record as a whole. *Id.* at 171. Harm sufficient to warrant reversal must be actual, not merely theoretical, harm. *Id.* at 174.

Our review of the record reveals that any harm done would not have been sufficient to warrant reversal. The State established conclusively that (1) each victim was a police officer,[5] (2) it was reasonably

---

4. *See Caldwell v. State*, 971 S.W.2d 663, 667 (Tex.App.-Dallas 1998, pet. ref'd) ("The abstract or definitional paragraphs serve as a kind of glossary to help the jury understand the meaning of concepts and terms used in the application paragraphs of the charge. Thus, a charge is adequate if it contains an application paragraph that authorizes a conviction under conditions specified by other paragraphs of the jury charge to which the application paragraph necessarily and unambiguously refers, or contains some logically consistent combination of such paragraphs.").

5. Each victim responded affirmatively when asked by the State whether he was a police officer with the Corpus Christi Police Department.

clear that each victim was a police officer,[6] and (3) each victim was acting in lawful discharge of his duty.[7] Salahud-din's own testimony clearly demonstrated that he knew that the victims were police officers.[8] Defense counsel even stipulated throughout the trial and at closing argument that the issue of whether the victims were police officers was not in dispute.

We also observe that the jury could just as reasonably have convicted Salahud-din of attempted capital murder under the theory that he attempted to murder more than one person. TEX. PEN.CODE ANN. § 19.03(a)(7)(A) (Vernon Supp.2006). In this case, there were five victims. Because the jury determined that Salahud-din attempted to murder all five victims in the course of the same criminal transaction, the elements of section 19.03 were satisfied even without proving beyond a reasonable doubt that the victims were police officers acting in lawful discharge of their duties. See TEX. PEN.CODE ANN. § 19.03 (a)(7) (Vernon Supp.2006).

### B. Form of the Indictment

 By the second sub-issue of his second point of error, Salahud-din alleges that the indictment was defective because it failed to adequately define the offense of attempted capital murder. In particular,

Salahud-din argues that the indictment omitted elements of the offense of attempted capital murder because (1) it failed to identify the victims as police officers acting in lawful discharge of their duties, and (2) it failed to allege that Salahud-din knew the victims were police officers at the time of the offense. See TEX. PEN.CODE ANN. § 19.03(a)(1) (Vernon Supp.2005). The failure to allege an element of an offense in an indictment is a defect in the substance of the indictment. Studer v. State, 799 S.W.2d 263, 268 (Tex.Crim.App.1990) (en banc). The State responds that Salahud-din failed to preserve error and, regardless, the indictment was sufficient.

Prior to 1985, the Texas Constitution addressed the omission of an offense's elements from an indictment as a fundamental defect that deprived the court of jurisdiction. See generally Studer, 799 S.W.2d 263. Accordingly, such errors could be raised for the first time on appeal. Id. at 266–67. On November 5, 1985, Texans voted for constitutional amendments designed to reduce the frequency with which criminal convictions were reversed because of defective indictments. Id. at 268–71. The 69th Legislature amended the Code of Criminal Procedure in conjunction with those constitutional amendments.[9] Id. The

---

6. The State asked each victim what he was wearing the night of the gunfight. Four of the five responded that they were in full police uniform. The fifth officer, Officer Cantu, was wearing a police T-shirt and a police belt with a gun.

7. The State asked each victim why he was present at the scene of the gunfight. Four of the victims were responding either to calls from residents or calls from other officers. The fifth officer, Officer Cantu, lived at the apartment complex and responded once he heard the gunfight.

8. Salahud-din testified, "I loaded my firearm and I just waited for him to drive up in a car

because I knew that's where he had ran to, next. . . . And I just stood there, and then some time went by and I remember a car drove up real fast. It was a police car. And I was like, here he is, right here. And he drove up and he jumped out of the car with his gun and aimed to shoot me." Defense counsel then asked Salahud-din, "Did you think at that time it was Officer Blintiff?" Salahud-din responded "Yes, sir."

9. See TEX.CODE CRIM. PROC. ANN. art. 1.14(b) (Vernon 2005) which states:

 If the defendant does not object to a defect, error, or irregularity of form or substance in an indictment or information before the date on which the trial on the merits com-

combined effect of the statutory and constitutional amendments eliminated insufficiencies in the indictment from the list of fundamental defects that deprived a trial court of jurisdiction. *Id.* at 271–73. Under the amended laws, most defects in an indictment must now be raised before trial or the right to complain of the defect is forfeited. *Id.* The amended provision in the code of criminal procedure requires, among other things, that substance exceptions be raised pre-trial or otherwise the accused has forfeited his right to raise the objection on appeal or by collateral attack. *See* TEX.CODE CRIM. PROC. ANN. art. 1.14(b) (Vernon 2005). Since omitting an element from an indictment is a defect of substance in an indictment, it naturally follows that the indictment is still an indictment despite the omission of that element. *Stu-*

*der,* 799 S.W.2d at 268–71. Because Salahud-din failed to object to the allegedly defective indictment before trial, he may not raise the issue on appeal. We overrule his second sub-issue.[10]

### V. Conclusion

We have reviewed, as we must, Salahuddin's two points of error under the applicable appellate standards of review. Having overruled both points of error, we affirm the judgment.

---

mences, he waives and forfeits the right to object to the defect, error, or irregularity and he may not raise the objection on appeal or in any other post conviction proceeding.

**10.** *See Fisher v. State,* 887 S.W.2d 49 (Tex. Crim.App.1994) ("Defects of substance ... contained in the indictment must be objected to at trial or are waived, and 'defect of substance' includes omission of required element

or elements of the offense charged."); *Limas v. State,* 941 S.W.2d 198, 203 (Tex.App.-Corpus Christi 1996, pet. ref'd) ("The defendant was required to object to defects in the indictment prior to trial, and the defendant's failure to do so waived any right to complain of deficiencies in the indictment; omissions from the indictment could have been raised before trial, as it was obvious that the State sought to prosecute for attempted capital murder.").