Opinion issued June 5, 2008







 
 






In The
Court of Appeals
For The
First District of Texas
____________

NO. 01-07-00741-CR
____________

ALEXANDER CARENZO CARTER, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from 262nd District Court
Harris County, Texas
Trial Court Cause No. 1104376



 
MEMORANDUM OPINION

          Appellant, Alexander Carenzo Carter, was charged with the felony offense of
aggravated robbery. Tex. Pen. Code Ann. § 29.03(a)(1), (2) (Vernon 2007). Carter
pleaded guilty to the indictment. After deliberating, the jury assessed punishment at
35 years’ confinement, plus a $10,000 fine.
          In three points of error, Carter contends (1) the trial court erred in failing to
conduct an inquiry with regard to his competency, (2) he received ineffective
assistance of counsel because his attorney failed to request that the court conduct a
competency inquiry to determine his fitness to stand trial, and (3) he received
ineffective assistance of counsel because his attorney failed to move to suppress his
videotaped statement.
          We affirm.I. Factual Background
          On Valentine’s Day 2007, Carter and an accomplice attacked Roberta Martinez
after she left her office building. Martinez had opened the door to her vehicle when
Carter shoved her across the driver’s seat and demanded her keys and cellular phone. 
Carter lay on top of Martinez’s body, threatened her with obscenities, and held a knife
to her neck with one hand. With his other hand, he choked Martinez. Carter dragged
Martinez out of the car, instructed her to keep her head down, and told her to avoid
looking at him. Carter then ordered Martinez to “run to the left,” threatening to kill
her if she ran in another direction or turned back to look at Carter and his accomplice. 
Carter and his accomplice eventually drove away in Martinez’s vehicle.
          Martinez returned to her office building, called the police, and provided them
with her vehicle information. Shortly thereafter, while on patrol, Officer Hefferin
with the Bellaire Police Department received a radio report of the car theft. Hefferin
recognized the stolen car in traffic from the radio description and began to chase the
vehicle. After the pursuit ensued, Carter crashed the stolen vehicle into a gate of an
apartment complex; Carter and his accomplice exited the vehicle. Hefferin
immediately apprehended Carter’s accomplice, but Carter fled through the apartment
complex and hid behind a gate. After a few minutes, Carter surrendered to an officer
with the Houston Police Department. 
          During the guilt-innocence phase of Carter’s trial, Detective Lacy, also with
the Bellaire Police Department, testified on behalf of the State. Lacy testified that he
had advised Carter of his Miranda rights after officers had taken him to the police
department. Lacy recounted that Carter indicated that he understood his
constitutional rights, and Carter signed a document stating that he understood those
rights. Carter indicated that he was willing to waive those rights and speak with
Lacy. The trial court admitted a videotape of Detective Lacey’s interview.
          In his videotaped confession, Carter acknowledged that he had participated in
the theft of Martinez’s vehicle with a man named “Ghost.” Carter denied that any
weapon was used in the commission of the crime. Carter stated that he robbed
Martinez to get back to the north side of town, and so that he could take his girlfriend
out for Valentine’s Day.
          The next day, before resuming trial, Carter’s trial counsel informed the trial
court that Carter had elected to withdraw his plea of “not guilty” and to plead guilty,
leaving the issue of punishment to the jury. The following exchange then took place
outside the presence of the jury:
Trial Court: We’re outside the presence of the jury back on the record
. . . . We’re presently in trial on this matter, the jury, having been
selected. I’ve been told by the lawyers in this case that Mr. Carter now
wishes to change his plea from not guilty to guilty [of] the alleged
offense . . . . Is that the understanding that everyone has?

                    Trial prosecutor: Yes, Your honor.
 
Carter’s Counsel: Yes, it is, Your Honor.

. . .
 
Trial Court: Let me explain this to you, Mr. Carter, during the pendency
of this case, you have done several things that do not give me great
comfort. You went into some type of fit in the holdover, and hit the
glass. Then you came out and said you were incompetent, but then
when you realized I wasn’t buying it, you suddenly regained your
competency. I just want to make sure you understand something, if
you’re doing this for any reason other than the one stated, and you plan 
to disrupt this trial or do something along those lines, that will not be a
good thing to do. All right. I’m taking you at your word that this is
what you want to do. You need to take me at my word. I’m dead
serious about how we run business in this court; and this is a very
serious offense. This jury is very sincere in their approach to the case,
as is the attorney for the State, as is your lawyer, as am I and the court
reporter; and I will allow you to do this if this is what you wish to do. 
If this is some ill-advised scheme to try to gain advantage and then do
something to disrupt this court, I just advise against it. Are we all
square on ths?

                    Carter: Yes, sir.

                    Trial Court: And this is what you wish to do?

                    Carter: Yes, sir.
 
Trial Court: All right. Are you pleading guilt[y] to this because you are
guilty of it?

                    Carter: Yes, sir.

                    Trial Court: That includes using a knife?

                    Carter: Yes, sir.

          Following Carter’s guilty plea before the jury, the trial proceeded to the
punishment phase. There, Carter testified on his own behalf. Carter explained that
it was his accomplice’s idea to rob Martinez. He testified that he thought about his
actions in jail and was sorry for committing the offense. He told the jury that he
committed the robbery in order to obtain money to take his girlfriend out for
Valentine’s Day. Carter denied holding a knife to Martinez’s neck during the
robbery, stating he instead held the knife by his hip. Finally, Carter testified he was
“traumatized” by the robbery. 
II. Discussion
A.      Competency to Stand Trial
          Carter first contends that the trial court abused its discretion in accepting his
plea of guilty and proceeding with punishment without a competency inquiry.
          We review a trial court’s decision not to conduct a competency inquiry under
an abuse of discretion standard. Moore v. State, 999 S.W.2d 385, 393 (Tex. Crim.
App. 1999); Lawrence v. State, 169 S.W.3d 319, 322 (Tex. App.—Fort Worth 2005,
pet. ref’d). A defendant is presumed competent to stand trial and shall be found
competent to stand trial unless proved incompetent by a preponderance of the
evidence. Tex. Code Crim. Proc. Ann. art. 46B.003 (b) (Vernon Supp. 2007). A
defendant is incompetent to stand trial if he lacks: (1) sufficient present ability to
consult with his lawyer with a reasonable degree of rational understanding or (2) a
rational, as well as factual, understanding of the proceedings against him. Id. art.
46B.003 (a). Either party may suggest by motion, or the trial court may suggest on
its own motion, that the defendant may be incompetent to stand trial. Id. art.
46B.004(a). If evidence suggesting the defendant may be incompetent to stand trial
comes to the attention of the court, the court on its own motion shall suggest that the
defendant may be incompetent to stand trial. Id. art. 46B.004(b) (Vernon Supp.
2007). On suggestion that the defendant may be incompetent to stand trial, the court
shall determine by informal inquiry whether there is some evidence from any source
that would support a finding that the defendant may be incompetent to stand trial. Id.
art. 46B.004(c). 
          In this case, the trial court ordered that Carter undergo a psychiatric evaluation
prior to trial. In the trial court’s order, it noted that Carter stated he was having
memory problems. Id. Carter asserts that reports from court personnel that Carter
had, at some point, exhibited symptoms of a “mental disturbance” raised the question
of his fitness to stand trial. Carter further asserts that the fact that he underwent the
court ordered psychiatric examination before trial and was on some type of
medication should have alerted the trial court to make a further inquiry into his
competence. 
          Upon review, we conclude that the trial court did not abuse its discretion in not
holding an informal inquiry into Carter’s competence to stand trial because no
evidence exists in the record that suggests that Carter did not have (1) sufficient
present ability to consult with his lawyer with a reasonable degree of rational
understanding or (2) a rational as well as factual understanding of the proceedings
against him. See Tex. Code Crim. Proc. art. 46B.003(a) (Vernon Supp. 2007). 
There is no evidence indicating recent severe mental illness, moderate mental
retardation, or truly bizarre acts by Carter. See Salahud-Din v. State, 206 S.W.3d
203, 209 (Tex. App.—Corpus Christi 2006, pet. ref’d). Significantly, Carter testified
lucidly in the punishment phase of trial and responded appropriately to questions
from both defense counsel and the State. See id. at 209. Nothing in Carter’s
testimony in this case is irrational; he testified that he regretted committing the crime,
but that his accomplice and his need for money pressured him into it. See id. 
Finally, Carter was able to communicate with the trial judge and appeared to have a
rational and factual understanding of the proceedings against him. 
          We hold that Carter’s assertions do not establish the required elements of
incompetency concerning his ability to consult with his counsel with a reasonable
degree of understanding or a rational and factual understanding of the proceedings
against him. See Brown, 129 S.W.3d at 766; Tex. Code Crim. Proc. Ann. art.
46B.003(a) (Vernon Supp. 2006). Accordingly, the trial court’s failure to conduct a
competency inquiry did not constitute an abuse of discretion.
B.      Ineffective Assistance of Counsel
          1.       Trial Counsel’s Failure to Move for a Competency Inquiry
          In his second point of error, Carter contends he received ineffective assistance
of counsel at trial because his attorney failed to move for an inquiry by the court to
determine Carter’s mental competence to stand trial. 
          We review claims of ineffective assistance of counsel under the standard set
forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984). Under the
Strickland test, a defendant must prove (1) his trial counsel’s representation was
deficient, and (2) the deficient performance was so serious that it deprived the
defendant of a fair trial. Id. at 687, 104 S. Ct. at 2064. To establish both prongs, the
defendant must prove by a preponderance of the evidence that counsel’s
representation fell below the objective standard of prevailing professional norms, and
there is a reasonable probability that, but for counsel’s deficiency, the result of the
proceeding would have been different. Id. at 690–94, 104 S. Ct. at 2066–68. An
defendant’s failure to satisfy one prong makes it unnecessary for a court to consider
the other prong. Id. at 697, 104 S. Ct. at 2069. This test is applied to claims arising
under the Texas Constitution as well as those arising under the United States
Constitution. Hernandez v. State, 726 S.W.2d 53, 56–57 (Tex. Crim. App. 1986).
          Our review of defense counsel’s performance is highly deferential, beginning
with the strong presumption that the attorney’s actions were reasonably professional
and were motivated by sound trial strategy. Jackson v. State, 877 S.W.3d 768, 771
(Tex. Crim. App. 1994). When the record is silent as to trial counsel’s strategy, we
will not conclude that defense counsel’s assistance was ineffective unless the
challenged conduct was “‘so outrageous that no competent attorney would have
engaged in it.’” Goodspeed v. State, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)
(quoting Garcia v. State, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)).
          When considering the first prong of Strickland, we must decide whether there
is sufficient evidence in the record to refute the strong presumption that trial counsel
rendered adequate assistance and made all decisions in the exercise of reasonable 
professional judgment. Bone v. State, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002). 
To this end, the Strickland standard requires Carter to rebut the presumption of
adequate assistance by a preponderance of the evidence.   See Hernandez v. State, 988
S.W.2d 770, 772 (Tex. Crim. App. 1999).
          The analysis we used in Carter’s first issue on appeal applies to Carter’s claim
of ineffective assistance of counsel. Nothing indicates that defense counsel possessed
credible information to present to the trial court regarding Carter’s incompetency to
stand trial. See Jackson v. State, 973 S.W.2d 954, 955 (Tex. Crim. App. 1998) (claim
for ineffective assistance of counsel must be affirmatively supported by the record). 
As Carter’s brief notes, “the record . . . is bereft of any evidence of the history of
[Carter’s] psychiatric illness, or of its exact nature[.]” Carter thus has not rebutted the
presumption that trial counsel made her decision not to request a competency inquiry
in the exercise of reasonable professional judgment. Gamble v. State, 916 S.W.2d 92,
93 (Tex. App.—Houston [1st Dist.] 1996, no pet.). In light of these facts, we hold
that the record is insufficient to show trial counsel’s performance was deficient.
          2.       Trial Counsel’s Failure to Move to Suppress Carter’s Videotaped
Confession
          Carter further complains he received ineffective assistance because his trial
counsel did not move to suppress his videotaped confession on the basis that he was
incompetent to give it. Again, the record lacks evidence that Carter was incompetent
at the time he gave his confession and, therefore, that his counsel should have moved
to suppress the confession on these grounds. At the time Carter gave his statement,
he said he understood his rights, waived them, and voluntarily spoke to officers. We
hold that trial counsel’s failure to move to suppress Carter’s statement on this basis
appears to have been made in the exercise of reasonable professional judgment. See
Jackson, 973 S.W.2d at 955.

 
III. Conclusion

          We conclude that the trial court did not abuse its discretion in failing to inquire
into Carter’s competency to stand trial, and that counsel did not render ineffective
assistance. We therefore affirm the judgment of the trial court. 
 
 
                                                                        Jane Bland,
                                                                        Justice


Panel consists of Justices Taft, Jennings, and Bland.

Do not publish. See Tex. R. App. P. 47.2(b).