

NUMBER 13-07-00505-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

ISRAEL YBARRA,                                                                        Appellant,

v.

THE STATE OF TEXAS,                                                                  Appellee.

### On appeal from the 36th District Court
### of Aransas County, Texas.

# MEMORANDUM OPINION

### Before Justices Yañez, Rodriguez, and Benavides
### Memorandum Opinion by Justice Rodriguez

A jury convicted appellant Israel Ybarra of arson, and the trial court sentenced him to twenty years' confinement. *See* TEX. PENAL CODE ANN. § 28.02 (Vernon Supp. 2008). By three issues, Ybarra contends: (1) the trial court violated his due process rights by denying his request for a jury trial to determine his competency; (2) the jury's rejection of

his insanity defense was against the great weight and preponderance of the evidence; and (3) the evidence was legally and factually insufficient to support his conviction.  We affirm.

## I.  BACKGROUND

On or about the night of June 29, 2006, Ybarra set fire to a couch cushion in his trailer.  The trailer caught on fire, and residents of the trailer park called 9-1-1 to notify the fire department and police.  When the first police officer arrived, he found the trailer engulfed in flames and Ybarra coughing on his hands and knees in front of the burning trailer.  Ybarra provided several different stories to police regarding the fire, including that a gang had started the fire in retaliation against Ybarra and that Ybarra himself had started the fire to kill himself because he believed his wife and children had left him.

On October 26, 2006, Ybarra was indicted for arson, specifically that "with intent to damage or destroy a habitation" Ybarra "start[ed] a fire, or cause[d] an explosion, by igniting a fire on a [couch] cushion . . . knowing that said habitation was within the limits of an incorporated city or town, namely, the city of Rockport, Texas."  *See id*. § 28.02(a)(2)(A).  Ybarra filed pretrial motions, including, among others, a motion suggesting incompetency and request for examination, in which Ybarra asked the court to appoint a disinterested expert to explore the issue of incompetency.  *See* TEX. CODE CRIM. PROC. ANN. art. 46B.021(a)(1) (Vernon 2006).  In an affidavit in support of his suggestion of incompetency, counsel for Ybarra stated that Ybarra is mentally disabled, "has a long history of suicidal [sic] attempts," has problems with comprehension, reasoning, and judgment, and was not able to communicate effectively with counsel concerning any possible defenses.

2

On December 28, 2006, the trial court held a pretrial hearing on Ybarra's request for examination. At the pretrial hearing, Ybarra's wife, Christina Diaz Ybarra, testified that she had known Ybarra for twenty-one years and that he had been under psychiatric care and receiving Social Security benefits since he was seventeen. According to his wife, Ybarra has the mind of an eight-year-old, is bipolar and schizophrenic, and suffers from depression. The trial court granted Ybarra's request for an examination on the issue of competency and appointed Burton A. Kittay, Ph.D., to conduct the examination.

Dr. Kittay interviewed Ybarra and performed various psychological tests. Dr. Kittay also spoke with the guards and nurses at the jail where Ybarra was being held. In his report to the court, Dr. Kittay observed that, although Ybarra claimed he did not understand why he was in jail, he expressed remorse over his actions and stated he knew he was arrested for arson. Dr. Kittay also found that Ybarra had the ability to effectively communicate with his attorney and understand the adversarial nature of the proceedings against him but chose not to do so. Dr. Kittay believed that Ybarra was being purposefully uncooperative and attempting to manage the information he gave to Dr. Kittay to show he was incompetent. In his report, Dr. Kittay concluded that Ybarra was competent to stand trial.

On February 20, 2007, the trial court appointed Christopher L. Klass, Ph.D., to conduct a second examination of Ybarra. The trial court's basis for ordering the second examination is not apparent from the record. Dr. Klass interviewed Ybarra and conducted various psychological tests. In his report, Dr. Klass noted that Ybarra had substance-induced major depressive disorder. However, Dr. Klass found that Ybarra had the presence of mind to assist his attorney and could rationally understand the charges,

potential consequences, and adversarial nature of the proceedings.  Dr. Klass concluded that Ybarra was competent to stand trial.  Dr. Klass then proceeded to conclude that Ybarra was legally insane; he determined that Ybarra's mental state was compromised by his psychiatric disorder such that he did not know his conduct was wrong at the time of the fire.

At the announcement docket on March 15, 2007, the State requested a psychiatric examination on the issue of insanity.  The trial court appointed Joel Kutnick, M.D., to conduct a mental examination of Ybarra.  As the basis of his report, Dr. Kutnick: interviewed Ybarra; reviewed the evaluations conducted by Dr. Kittay and Dr. Klass; reviewed police offense reports, witness statements, and Ybarra's voluntary statement; and discussed the case with the assistant district attorney.  In his report, Dr. Kutnick observed that Ybarra changed his story at least twice regarding how and why the trailer was burned down.  Dr. Kutnick found that Ybarra potentially suffered from several different mental disorders, including substance dependence, schizoaffective disorder, antisocial personality disorder, and malingering.[1]  Dr. Kutnick believed that Ybarra's mental processes were logical and goal-directed, that he was oriented to person, place, and time, and that he was able to communicate well.  Dr. Kutnick concluded that, even if Ybarra experienced the hallucinations and other delusions he claimed, he nonetheless understood that setting fire to the trailer was against the law.  Dr. Kutnick further concluded that Ybarra had no mental disease or defect that rendered him incapable of knowing his conduct was wrong.

---

[1] Malingering is defined as "pretend[ing] or exaggerat[ing] incapacity or illness so as to avoid duty or work."  Medline Plus, http://www2.merriam-webster.com/cgi-bin/mwmednlm?book=Medical&va=malingering (last visited July 24, 2009).

4

At an announcement docket on April 24, 2007, Ybarra's counsel requested a trial by jury on the issue of competency. The trial court asked counsel to provide evidence supporting Ybarra's request. Counsel replied that, after talking to Ybarra on at least two or three occasions, she had concluded that he could not "help [counsel] with any of the facts or anything, any of the events that happened on the day of the incident of arson." Counsel stated, "I just feel that he is not being [sic] able to assist me in any way in trying to build up a defense to the charge." The trial court concluded that the issue of incompetence had been resolved stating, "I don't think there is an issue of incompetency." The trial court denied Ybarra's request.

When Ybarra's case was called for trial on July 16, 2007, trial counsel objected that Ybarra was not able to assist her in preparation of his case. Trial counsel stated that she believed that Ybarra was not competent to stand trial. Although acknowledging that none of the experts that examined Ybarra had the professional opinion that he was incompetent to stand trial, trial counsel asserted that, based on her personal assessment, Ybarra was incompetent "due to the fact he's not assisting me in any way." After questioning Ybarra about his background and the case against him, the trial court denied counsel's request for a trial on the issue of competency. After a two-day trial, the jury found Ybarra guilty of arson, and the trial court sentenced him to 20 years' confinement. This appeal ensued.

## II. DISCUSSION

Ybarra disputes his conviction by three issues. First, Ybarra argues his due process rights were violated when the trial court refused to hold a jury trial on the issue of his competency. Second, Ybarra contends that the evidence was factually insufficient to

5

support the jury's rejection of his insanity affirmative defense.  Finally, Ybarra challenges the evidence of his arson conviction as both legally and factually insufficient.

### A.  Competency

By his first issue, Ybarra contends that the trial court denied him due process by refusing to order a jury trial on the issue of his competence to stand trial.

1.  Standard of Review and Applicable Law

A trial court's failure to conduct a competency hearing or inquiry is reviewed under an abuse of discretion standard.  *Salahud-Din v. State*, 206 S.W.3d 203, 207 (Tex. App.–Corpus Christi 2006, pet. ref'd) (citing *Moore v. State*, 999 S.W.2d 385, 393 (Tex. Crim. App. 1999)).  We will find an abuse of discretion if the trial court's decision is arbitrary or unreasonable.  *Lawrence v. State*, 169 S.W.3d 319, 322 (Tex. App.–Fort Worth 2005, pet. ref'd).

"The conviction of an accused person while he is legally incompetent violates due process."  *Salahud-Din*, 206 S.W.3d at 207.  Under the Texas Code of Criminal Procedure, "[a] person is incompetent to stand trial if the person does not have:  (1) sufficient present ability to consult with the person's lawyer with a reasonable degree of rational understanding; or (2) a rational as well as factual understanding of the proceedings against the person."  TEX. CODE CRIM. PROC. ANN. art. 46B.003(a) (Vernon 2006).  A defendant is presumed competent, and the trial court shall find him competent, unless he is proved incompetent by a preponderance of the evidence.  *Id*. art. 46B.003(b).

"Either party may suggest by motion . . . that the defendant" may not be competent to stand trial.  TEX. CODE CRIM. PROC. ANN. art. 46B.004(a) (Vernon 2006).  Upon such a

6

suggestion, "the court may appoint one or more disinterested experts to . . . examine the defendant and report to the court on the competency or incompetency of the defendant . . . ." TEX. CODE CRIM. PROC. ANN. art. 46B.021(a)(1). If the evidence presented raises a bona fide doubt as to the defendant's competency, the trial court shall "determine by informal inquiry whether there is some evidence from any source that would support a finding that the defendant may be incompetent . . . ." TEX. CODE CRIM. PROC. ANN. art. 46B.004(d); *Salahud-Din*, 206 S.W.3d at 208. If the informal inquiry uncovers evidence "to support a finding of incompetency, the court shall order an examination . . . to determine whether the defendant is incompetent to stand trial in a criminal case." TEX. CODE CRIM. PROC. ANN. art. 46B.005(a) (Vernon 2006). Furthermore, generally, if the trial court determines that some evidence exists to support a finding of incompetency, the court shall order a trial to determine competency, and if any party so requests, a jury shall make the determination as to whether the defendant is incompetent. TEX. CODE CRIM. PROC. ANN. arts. 46B.005(b), 46B.051 (Vernon 2006).

To determine whether the evidence requires a hearing on incompetency, the trial court shall "consider only the evidence tending to show incompetency" to determine whether "there is some evidence, a quantity more than none or a scintilla, that rationally could lead to a determination of incompetency." *Moore*, 999 S.W.2d at 393; *see also Hartfield v. State*, No. 2-7-454-CR, 2008 WL 5401491, at *1-2 (Tex. App.–Fort Worth Dec. 23, 2008, pet. ref'd) (mem. op.) (applying the evidentiary standard from *Moore* in determining whether the trial court erred in refusing to hold a formal hearing on the defendant's competency pursuant to code of criminal procedure articles 46B.005(b) and

46B.051). Moreover, to present some evidence of his incompetency, the defendant must show that his past mental illnesses "somehow interfered with his present ability to communicate with his attorney or with his understanding of the proceedings against him." *Baldwin v. State*, 227 S.W.3d 251, 253 (Tex. App.–San Antonio 2007, no pet.) (citing TEX. CODE CRIM. PROC. ANN. art. 46B.003(a)).

2. Analysis

We are not being asked to determine whether there should have been a bona fide doubt in the trial judge's mind regarding Ybarra's competency to stand trial, which is the evidentiary requirement that must be met to compel an informal inquiry. *See* TEX. CODE CRIM. PROC. ANN. art. 46B.004(d); *Salahud-Din*, 206 S.W.3d at 208. Rather, it is clear from the record that at the December 28, 2006 pretrial hearing, the court commenced its informal inquiry. The court heard both argument from counsel and testimony from Ybarra's wife describing his long history of mental illness. At the conclusion of the December 28 hearing, the trial court granted Ybarra's request to appoint a disinterested expert to conduct a psychological examination of Ybarra.[2] *See* TEX. CODE CRIM. PROC. ANN. art.

---

[2] The record does not demonstrate that the trial judge made a "determination that evidence existed to support a finding of incompetency" at the December 28, 2008 pretrial hearing. *See* TEX. CODE CRIM. PROC. ANN. art. 46B.005(a). The mere fact that the trial court granted Ybarra's request for an incompetency examination does not constitute evidence sufficient to raise the issue of incompetency. *See Rodriguez v. State*, 816 S.W.2d 493, 495 (Tex. App.–Waco 1991, pet. ref'd); *see also Hartfield v. State*, No. 2-7-454-CR, 2008 WL 5401491, at *2 n.5 (Tex. App.–Fort Worth Dec. 23, 2008, pet. ref'd) (mem. op.) (noting that the trial court's ordering of an examination is not evidence, in itself, of a defendant's incompetency, in response to argument by the appellant that, because the trial court granted his motion and ordered an examination, an inference could be made that the trial court had made a determination that there was evidence to support a finding of incompetency); *see, e.g., Salahud-Din v. State*, 206 S.W.3d 203, 208 (Tex. App.–Corpus Christi 2006, pet. ref'd) (concluding that, even in light of three pretrial psychological examinations ordered by the trial court, the defendant had not presented sufficient evidence to compel a hearing on incompetency). After ordering the examination, the trial court was still required to determine whether there was some evidence to support a finding of incompetency before holding a formal hearing on the issue. *See LaHood v. State*, 171 S.W.3d 613, 618 (Tex. App.–Houston [14th Dist.] 2005, pet. ref'd).

46B.021(a)(1). The court appointed Dr. Kittay. For reasons unclear in the record, the court appointed a second expert, Dr. Klass, at the February 20, 2007 pretrial hearing. The reports of both experts concluded that Ybarra was competent to stand trial. Dr. Kittay, in particular, noted that Ybarra had the ability to communicate with his attorney and understand the proceedings but chose not to do so.

The trial court twice determined, during its informal inquiry, that Ybarra's competence was not at issue. *See id*. art. 46B.005; *see also Hartfield*, 2008 WL 5401491, at *1-2 (holding that a court need not hold a formal hearing on incompetency unless there exists some evidence to raise the issue). Both at the April 24, 2007 announcement docket and at the beginning of trial on July 16, 2007, Ybarra requested a jury trial on his competence to stand trial, and the trial court then made its determination that there was no issue of incompetency in the case. The court noted that none of the examination reports determined Ybarra was incompetent. The only evidence "tending to show incompetency" presented to the court were statements by Ybarra's counsel that Ybarra was unable to assist her in the preparation of his case. *See Moore*, 999 S.W.2d at 393 (requiring that the court consider only evidence showing the defendant's incompetence in determining whether there should be a hearing on the issue). "It is not enough . . . for counsel to allege unspecified difficulties in communicating with the defendant. . . . [S]uch information must be specific and illustrative of a present inability to communicate with the defendant." *See id*. at 394; *Baldwin*, 227 S.W.3d at 253 ("A statement that a defendant is or may be incompetent is not by itself sufficient" evidence to support a determination of incompetency).

We conclude that the trial court did not abuse its discretion in failing to conduct a formal hearing or jury trial on the matter of Ybarra's competence because the court's informal inquiry did not reveal evidence "that rationally could lead to a determination of incompetency." *See Moore*, 999 S.W.2d at 393. Neither did Ybarra's evidence link his past mental health issues with his present inability to communicate with his counsel or understand the proceedings against him. *See Baldwin*, 227 S.W.3d at 253. In light of the evidence presented, the trial court's decision was neither unreasonable nor arbitrary. *See Lawrence*, 169 S.W.3d at 322. Ybarra's first issue is overruled.

## B. Insanity

By his second issue, Ybarra contends that the evidence was factually insufficient to support the jury's rejection of his affirmative defense of insanity.

### 1. Standard of Review and Applicable Law

When a defendant challenges on appeal the factual sufficiency of the evidence supporting the jury's rejection of his insanity affirmative defense, we will consider all the evidence relevant to the affirmative defense of insanity in a neutral light to determine whether the jury's decision was so against the great weight and preponderance of the evidence as to be manifestly unjust. *Bigby v. State*, 892 S.W.2d 864, 875 (Tex. Crim. App. 1994) (en banc); *Meraz v. State*, 785 S.W.2d 146, 155 (Tex. Crim. App. 1990); *see also Lopez v. State*, No. 13-05-148-CR, 2007 WL 2471396, at *1 (Tex. App.–Corpus Christi Aug. 31, 2007, pet. ref'd) (mem. op.). An appellate court will overturn the jury's determination on insanity only when the issue is "undisputed or resolved to one end of the

10

spectrum outside the realm of discretion."  *Reyna v. State*, 116 S.W.3d 362, 367 (Tex. App.–El Paso 2003, no pet.) (citing *Bigby*, 892 S.W.2d at 878).

Insanity is an affirmative defense for which the defendant bears both the burden of proof and burden of persuasion.  TEX. PENAL CODE ANN. § 8.01(a) (Vernon 2003); *Meraz*, 785 S.W.2d at 150.  The purpose of the insanity defense is to determine whether the defendant should be held responsible for the crime or whether a mental condition excuses the defendant from such responsibility.  *Graham v. State*, 566 S.W.2d 941, 948 (Tex. Crim. App. 1978).  The crucial question is whether "at the time of the conduct charged, the [defendant], as a result of severe mental disease or defect, did not know that his conduct was wrong."  TEX. PENAL CODE ANN. § 8.01(a).  Although the defendant "may be medically insane," he can nonetheless "retain criminal responsibility" if his "mental condition does not prevent [the] defendant from distinguishing right from wrong."  *Reyna*, 116 S.W.3d at 367 (citing *Graham*, 566 S.W.2d at 948).

"Expert testimony on the issue of appellant's ability to determine right from wrong does not establish insanity as a matter of law."  *Torres v. State*, 976 S.W.2d 345, 347 (Tex. App.–Corpus Christi 1998, no pet.).  And while expert testimony may assist the jury in its determination of the insanity issue, such testimony does not dictate the result.  *See Graham*, 566 S.W.2d at 949; *Torres*, 976 S.W.2d at 347.  In reaching its decision on insanity, the jury may consider circumstantial evidence such as: the defendant's demeanor before and after the crime; the defendant's attempts to evade police or conceal incriminating evidence; the defendant's expressions of regret, fear, or knowledge of the consequences of his actions; and any other possible explanations for the defendant's

11

behavior. *See Torres*, 976 S.W.2d at 347-48; *Mitten v. State*, 79 S.W.3d 751, 758 (Tex. App.–Corpus Christi 2002), *rev'd on other grounds*, 145 S.W.3d 225 (Tex. Crim. App. 2004).

2. Analysis

Ybarra argues that the jury's rejection of his insanity affirmative defense was supported by factually insufficient evidence. At trial, Ybarra's neighbors testified that, on the night of the fire, he came to their door and warned them that he was going to set fire to his trailer. He warned them to protect their belongings because he was going to try to kill himself by burning down his trailer. They stated that Ybarra was upset about his wife leaving and that he told them he was going to burn down his trailer because he was depressed and wanted to kill himself. The police, fire investigators, and other witnesses at the scene testified that Ybarra appeared calm after the fire and was lucid in response to their concerns and questions. After Ybarra was arrested, he expressed remorse over the fire and insisted it was an accident.

Dr. Kutnick, a psychiatrist appointed by the court, testified that he believed Ybarra was exaggerating his symptoms and suspected that Ybarra's claims that he heard voices may not have been entirely true. Dr. Murthy Mangipudi, Ybarra's doctor at Coastal Plains MHMR, testified that Ybarra's medical records from January 2006 also indicated malingering—in other words, that Ybarra has a history of not being truthful about his symptoms and managing his responses to questions from doctors to avoid responsibility and control the type of treatment he receives.

Dr. Kutnick noted that Ybarra had changed his story about the fire several times. For example, Ybarra told police at one point that the fire had been started by gang members in retaliation. Ybarra also told investigators that he heard voices telling him to start the fire. Testimony of police officers at the scene corroborated these conflicting accounts. Dr. Kutnick concluded that these changing stories indicated that Ybarra was trying to make excuses and, therefore, knew his behavior was wrong. Dr. Kutnick also concluded that, even if Ybarra did suffer from a serious mental illness, such as schizophrenia, Ybarra nonetheless knew starting a fire in the trailer was against the law.

At trial, the jury also considered the following evidence: testimony from family members that Ybarra had suffered from severe mental illness, including schizophrenia and bipolar disorder, since he was a teenager; testimony from Ybarra's wife that he had not taken his medications for months before the fire; testimony from family members that Ybarra was hyper and behaved erratically and unpredictably when he was not taking his medications; testimony by Dr. Mangipudi that Ybarra would experience hyperactivity, agitation, and exacerbated emotional reactions when he was off his medications; and testimony by Dr. Klass, a psychologist appointed by the court, that he believed Ybarra suffered from severe substance-induced major depressive disorder, which, at the time of the fire, prevented him from understanding his actions were wrong. Ybarra argues that the evidence is overwhelming that he "has suffered a severe mental disease since childhood." He also points to the fact that, in his report, Dr. Klass "determined . . . that [a]ppellant was insane at the time he committed the offense because his mental state was so

compromised by his depressive disorder that he did not know that his conduct was wrong and he was incapable of conforming his conduct to the requirements of the law."

Based on the evidence presented, the jury could have concluded that, although Ybarra likely suffers from mental illness, he also has a tendency to exaggerate his symptoms to manipulate the outcome of an examination. The jury could have also concluded that Ybarra understood his actions were wrong because: he warned his neighbors that he was going to burn down his trailer so they could protect their belongings; he made several different excuses to the police regarding the cause of the fire, circumstantial evidence that Ybarra understood his conduct was wrong and was attempting to avoid responsibility; he expressed remorse over his actions and fear that he had harmed others; and although family members insisted he was not taking his medications and that he acted erratically when he was off his medications, Ybarra appeared lucid to police and witnesses at the scene of the fire. *See Torres*, 976 S.W.2d at 347-48 (holding that, in making its determination on insanity, the jury can consider evidence of, among other things, the defendant's demeanor at the time of the crime, any attempts by the defendant to evade detection by the police, and expressions of regret, fear, or knowledge of the consequences of his actions).

Even if we were to assume that Ybarra is medically insane, that fact, alone, does not prove his mental condition prevented him from knowing that burning down his trailer was wrong. *See* TEX. PENAL CODE ANN. § 8.01(a); *Reyna*, 116 S.W.3d at 367. Moreover, the conclusions of Dr. Klass do not dictate a finding of insanity. *See Graham*, 566 S.W.2d at 949. Rather, the jury is the sole judge of the credibility of witnesses and the weight to be given to the evidence. *See* TEX. CODE CRIM. PROC. ANN. art. 38.04 (Vernon 1979);

*Torres*, 976 S.W.2d at 347. We will not disturb its rejection of Ybarra's insanity defense because we presume that, in addition to Dr. Klass's report, the jury considered and weighed all of the other evidence; we will credit the jury's factual determinations on Ybarra's insanity affirmative defense because they were not "resolved to one end of the spectrum outside the realm of discretion." *See Reyna*, 116 S.W.3d at 367 (citing *Bigby*, 892 S.W.2d at 878). Thus, considering all the evidence in a neutral light, we conclude that there was factually sufficient evidence that Ybarra was sane at the time of the crime. *See* TEX. PENAL CODE ANN. § 8.01(a); *Bigby*, 892 S.W.2d at 875. Ybarra's second issue is overruled.

### C. Arson Conviction

By his third and final issue, Ybarra charges that the evidence of his arson conviction was both legally and factually insufficient. Specifically, Ybarra contends that the State did not prove that Ybarra had the requisite intent to destroy a building or habitation. *See* TEX. PENAL CODE ANN. § 28.02(a)(2). Ybarra also argues that the State presented no evidence that he knew the burned trailer was within the limits of an incorporated city or town. *See id*. § 28.02(a)(2)(A).

A. Standard of Review and Applicable Law

In conducting a legal sufficiency review, we view the relevant evidence in the light most favorable to the verdict to determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)); *Escamilla v. State*, 143 S.W.3d 814, 817 (Tex. Crim. App. 2004). The trier of fact

15

is the sole judge of the facts, the credibility of the witnesses, and the weight given to testimony. *See* TEX. CODE CRIM. PROC. ANN. art. 38.04 (Vernon 1979); *Beckham v. State*, 29 S.W.3d 148, 151 (Tex. App.–Houston [14th Dist.] 2000, pet. ref'd). We do not reevaluate the weight and credibility of the evidence, and we do not substitute our own judgment for the trier of fact. *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000) (en banc); *Beckham*, 29 S.W.3d at 151. Instead, we consider whether the jury reached a rational decision. *Beckham*, 29 S.W.3d at 151.

We apply the same standard for factual sufficiency as was described previously in the second issue. Both legal and factual sufficiency are measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *Adi v. State*, 94 S.W.3d 124, 131 (Tex. App.–Corpus Christi 2002, pet. ref'd). Under a hypothetically correct jury charge, a person commits the offense of arson if "the person starts a fire . . . with the intent to destroy or damage any building, habitation, or vehicle . . . knowing that it is within the limits of an incorporated city or town . . . ." *See* TEX. PENAL CODE ANN. § 28.02(a)(2)(A). Intent to commit arson can be proven by circumstantial evidence and may be inferred from any facts tending to prove its existence, such as the conduct, words, and acts of the defendant. *Beltran v. State*, 593 S.W.2d 688, 689 (Tex. Crim. App. 1980); *see also In re H.A.G.*, No. 13-07-00677-CV, 2008 WL 2154095, at *2 (Tex. App.–Corpus Christi May 22, 2008, no pet.).

B. Analysis

In addition to the testimony previously described, the jury was also presented with the following evidence: testimony by the owner of the trailer park that Ybarra's trailer was

16

compliant with electrical codes; testimony by a neighbor that Ybarra told her he was going to burn down the trailer and that her family should protect their property; testimony from the K-9 officer that his dog indicated the presence of accelerants in the burned trailer; testimony by the chemist from the state fire marshal's arson lab that debris from certain areas in the trailer tested positive for accelerants, namely gasoline; and testimony by the deputy state fire marshal, who investigated the scene, that he believed the fire was caused by arson.

Ybarra argues that the evidence only shows he was trying to kill himself and, therefore, that the evidence is insufficient to prove he had the requisite intent to destroy the trailer. We disagree. Based on the evidence presented, the jury could have rationally concluded that Ybarra set fire to his trailer with the intent to destroy it. He warned his neighbors of the impending blaze and the potential risk to their property; the jury could have inferred from this statement that Ybarra knew the fire was going to be large enough to threaten an adjacent trailer. Knowing that the trailer was electrically up to code, the jury could have rationally ruled out an electrical fire and suspected an intentionally-set fire. The jury also heard evidence that an accelerant was present at the scene and that the primary investigator believed the fire was caused by arson, i.e., that the fire was intentionally set. Operating under the cumulative impact of this circumstantial evidence, a rational jury could have inferred that Ybarra intended to destroy or damage his trailer by setting it on fire. *See Beltran*, 593 S.W.2d at 689.

Ybarra also contends that there was no evidence to prove that he knew the burned trailer was within the limits of an incorporated city or town. Evidence was presented at trial

17

that Ybarra signed a residential lease contract for the burned trailer and that the contract indicated that the trailer was located at 201 West Corpus Christi Street in Rockport, Texas. The evidence also showed that Ybarra had been living at that location for two to three months before the fire and that Ybarra had lived in Rockport periodically over the years. "Texas case law recognizes that when knowledge of the defendant must be established, it can be shown by independent facts and circumstances indicative of such knowledge." *Mouton v. State*, 627 S.W.2d 765, 768 (Tex. App.– Houston [1st Dist.] 1981, no pet.). The fact that Ybarra signed the lease, which clearly indicated the trailer was situated within Rockport, combined with the length of Ybarra's residence in Rockport, show that Ybarra knew the trailer, in which he had been living for at least three months, was located inside the city limits of Rockport. *See id.* (concluding that the defendant knew the vehicle he set on fire was within the city limits of Houston because he had lived in Houston when he was a child).

Viewing the evidence in the light most favorable to the verdict, we conclude that there was legally sufficient evidence to support Ybarra's conviction for arson. *See Hooper*, 214 S.W.3d at 13. The evidence showed that he had the requisite intent to commit the crime and the knowledge that the trailer he burned down was in the city limits of Rockport. *See* TEX. PENAL CODE ANN. § 28.02(a)(2)(A). We refuse to substitute our judgment for that of the jury and, in light of the ample evidence presented, find that the jury's decision was rational. *See Beckham*, 29 S.W.3d at 151. The evidence was, moreover, factually sufficient to support the guilty verdict. We cannot conclude that Ybarra's conviction was

against the great weight and preponderance of the evidence such that it was manifestly unjust. *See Bigby*, 892 S.W.2d at 875. Ybarra's third issue is overruled.

## III. CONCLUSION

We affirm the judgment of the trial court.

_____
NELDA V. RODRIGUEZ
Justice

Do not publish.
Tᴇx. R. Aᴘᴘ. P. 47.2(b).

Memorandum Opinion delivered and
filed this 24th day of August, 2009.