**James David CUNNINGHAM,**
**Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 14–98–00960–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Jan. 27, 2000.

Kent A. Schaffer, Houston, for appellants.

Rikke Burke Graber, Houston, for appellees.

Panel consists of Justices MAURICE E. AMIDEI, EDELMAN, and WITTIG.

## OPINION

DON WITTIG, Justice.

This case arises out of a traffic stop of James David Cunningham which escalated into his arrest for misdemeanor possession of marijuana. On a motion to suppress, appellant argued the officer detained him longer than necessary and exceeded the scope of his limited consent to search his vehicle. Therefore, the search violated the Texas and U.S. Constitutions and TEX. CODE CRIM. PROC. ANN. art. 14 and art. 38.23. The motion was denied. He pled nolo contendere and was placed on deferred adjudication and assessed a fine. He argues on appeal the court erred in denying his motion to suppress. We affirm.

### Background

Cunningham was pulled over for speeding by Bellaire Police Officer Shane Steele.[1] He produced his license and an expired proof of insurance. Steele asked him to look for current proof while he ran a background check on the license. While in his patrol car, Steele noticed Cunningham making "overt movements" by "constantly reaching over to the floorboard of the passenger's seat." Steele returned to Cunningham and told Cunningham he was making him nervous by all his movements and asked him if there was anything he should know about in the vehicle. Cunningham replied he was picking up some trash and putting it in a bag. Steele observed a bag stuffed with trash on the passenger side floorboard.

Steele asked Cunningham, "You don't have a gun in here or anything, do you?" Cunningham responded, "No. You're welcome to look."

When Cunningham exited the vehicle, Steele asked him if he was licensed to carry a handgun, to which he replied he was not. Steele began his search. Almost immediately, he found a bullet in the center console. Cunningham explained he had found it on the ground. Steele asked if he owned a pistol. Cunningham replied he did, but it was at home.

Steele continued his search on the passenger side. At that point, Steele observed Cunningham become "a little bit agitated" and approach him while he was searching the vehicle, asking if there was anything he could do. Steele testified that Cunningham then became "extremely nervous and fidgety" about the location he was getting close to and, for his safety and Cunningham's, placed Cunningham in the back seat of his patrol car. Cunningham then told Steele, "My lawyer would say not to allow you to do that."

Steele told Cunningham at that point he didn't have a choice. According to Steele, this was because of the bullet and that he had observed in plain view on the passenger side, a substance he believed to be marijuana residue. Steele again returned to his search and found a bag of marijuana in Cunningham's coat pocket on the passenger seat. He arrested Cunningham for possession of marijuana.

### Discussion

In his two issues presented, Cunningham contends the court erred in denying his motion to suppress the marijuana seized and used as evidence in violation of (1) TEX. CONST. Art. I, § 9 and TEX.CODE CRIM. PROC. ANN. arts. 38.23 and 14, and (2) U.S. CONST. Amends. IV and XIV. He

---

1. The verbal exchanges between the two were recorded by a device in the patrol car. The tape was introduced as evidence at the suppression hearing and is part of the appellate record.

consolidates these issues in arguing, more specifically, that these authorities were violated because (a) his detention was longer than necessary to effectuate the purpose of the stop, and (b) the officer went outside the scope of Cunningham's consent to search.

■ We generally review a trial court's ruling on a motion to suppress for abuse of discretion. *Villarreal v. State,* 935 S.W.2d 134, 138 (Tex.Crim.App.1996). We review de novo a trial court's determination of reasonable suspicion and probable cause. *Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim.App.1997). However, we afford almost total deference to a trial court's determination of historical facts that the record supports, especially when the findings are based on an evaluation of credibility and demeanor. *Id.* In reviewing a ruling on a question of the application of law to facts, we review the evidence in the light most favorable to the trial court's ruling. *Id.*

### A. Reasonableness of Detention

■ *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), governs our inquiry into the reasonableness of the detention. Under *Terry,* a two-prong inquiry is made into the reasonableness of an investigative detention. The first is whether the officer's action was justified at its inception. Cunningham concedes this because he does not dispute the initial stop for speeding was justified.

The second *Terry* prong is whether the officer's action was reasonably related in scope to the circumstances which justified the interference in the first place. *Terry,* 392 U.S. at 20, 88 S.Ct. 1868. In this connection, Cunningham cites *Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) for the proposition that "an investigative detention must last no longer than is necessary to effectuate the purpose of the stop" and "the scope of the detention must be carefully tailored to its underlying justification." Further, he points out that the propriety of a stop's

duration is judged by assessing whether the police diligently pursued a means of investigation that was likely to dispel or confirm their suspicions quickly. *United States v. Sharpe,* 470 U.S. 675, 686, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985); *Perez v. State,* 818 S.W.2d 512, 517 (Tex. App.—Houston [1st Dist.] 1991, no writ).

■ Cunningham argues that, in light of these cases, Steele should have let him go when he explained to Steele the reason for the movements in his vehicle and showed him there was indeed a bag of garbage in the same area he had been reaching. He contends that Steele's subsequent questioning of him about "unrelated criminal activity" was impermissible, therefore, his detention violated the Fourth Amendment. We disagree.

Fortunately, in addition to the testimony from the motion to suppress hearing, we are in the unusual circumstance of having in the record a recording of the exchanges between Steele and Cunningham at the time of the stop. The evidence reveals that Steele, who was on patrol by himself, was very concerned with Cunningham's movements and nervous behavior. Steele promptly asked Cunningham about his behavior and the focus of his questions was on whether Cunningham had a weapon. Though Cunningham may have given a plausible explanation for his behavior, we cannot say Steele unreasonably continued to detain him by asking one or two follow-up questions (which extended the detention by only seconds) to adequately dispel his concern about a weapon.

■ Cunningham also asserts that by the time he explained his movements to Steele, the original purpose for the stop had ended. This was not apparent from the record. Rather, the evidence shows that the original purpose never was concluded because Steele's primary concern shifted from Cunningham's speeding and no proof of insurance to ascertaining the reason for Cunningham's behavior. Though Steele's questions about Cunning-

ham's behavior were not about the initial purpose of the stop we cannot conclude that the questions were "wholly unrelated to the traffic stop," as Cunningham argues. When an officer makes a valid traffic stop, he is entitled to take sufficient measures to guarantee his safety. *Goodwin v. State*, 799 S.W.2d 719, 727 (Tex.Crim.App.1990), *cert. denied*, 501 U.S. 1259, 111 S.Ct. 2913, 115 L.Ed.2d 1076, (1991); *cf. Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977). In light of Cunningham's behavior, Steele's questions were not unrelated to the incident.

We believe Steele's testimony afforded specific and articulable facts which, taken with rational inferences warranted the brief additional detention. We therefore conclude Steele's detention of Cunningham was not unreasonable.

### B. Scope of Consent

Cunningham concedes that after Steele asked him the questions he contends were impermissible, he consented to a search limited to weapons. However, he argues that his consent was limited to a search *only* for weapons, not other contraband. As such, the seizure of the marijuana couldn't have been justified through that authorization.

 Assuming Cunningham's consent were limited to a search for a gun, Steele discovered in plain view during that search what he believed to be marijuana residue. A peace officer, after a bona fide stop for a traffic offense may then make an additional arrest for any other offense discovered during the investigation. *See Taylor v. State*, 421 S.W.2d 403 (Tex.Crim. App.1967). Under the "automobile exception" an officer may conduct a warrantless search of a motor vehicle if he has probable cause to believe the vehicle contains evidence of a crime. *Powell v. State*, 898 S.W.2d 821, 827 (Tex.Crim.App.1994). When a peace officer possesses probable cause that a motor vehicle contains contraband, he may search the entire vehicle including belongings that are capable of

containing the object of probable cause. *See Wyoming v. Houghton*, 526 U.S. 295, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999); *Delgado v. State*, 718 S.W.2d 718, 722 (Tex. Crim.App.1986). The discovery of what Steele believed to be marijuana residue gave him probable cause to believe the vehicle contained a larger quantity of marijuana, taken together with the furtive gestures and unexpended pistol round, reasonably supported a continued search of the vehicle. Therefore neither any limits to Cunningham's initial consent nor his later withdrawal of consent, if any, prohibited Steele from completing his search.

Appellant's two issues are overruled. The judgment of the trial court is affirmed.