ACCEPTED
14-14-00779-cr
FOURTEENTH COURT OF APPEALS
HOUSTON, TEXAS
8/5/2015 10:06:13 AM
CHRISTOPHER PRINE
CLERK

**No. 14-14-00779-CR**

In the
Court of Appeals
For the
Fourteenth District of Texas
At Houston

————————◆————————

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS

8/5/2015 10:06:13 AM

CHRISTOPHER A. PRINE
Clerk

**No. 1398109**
In the 182nd District Court
Of Harris County, Texas

————————◆————————

**MARCUS JAMEZ LEWIS**
*Appellant*
v.
**THE STATE OF TEXAS**
*Appellee*

————————◆————————

State's Appellate Brief

————————◆————————

**Devon Anderson**
District Attorney
Harris County, Texas

**Celeste Byrom**
Assistant District Attorney
Harris County, Texas

**Clinton A. Morgan**
Assistant District Attorney
Harris County, Texas
State Bar No. 24071454
morgan_clinton@dao.hctx.net

1201 Franklin St., Suite 600
Houston, Texas 77002
Telephone: 713.755.5826

Oral Argument Requested Regarding Appellant's First Point

**Statement Regarding Oral Argument**

The State believes that the issues surrounding the appellant's first point of error are interesting enough, and this Court's possible holdings various enough, that oral argument would aid this Court's decision-making process. Accordingly, the State requests oral argument, though only on the appellant's first point.

## Identification of the Parties

Counsel for the State:

      Devon Anderson
          ——District Attorney of Harris County

      Marisa Dunagan & Celeste Byrom
          — Assistant District Attorneys at trial

      Clinton A. Morgan
          ——Assistant District Attorney on appeal

Appellant:

      Marcus Jamez Lewis

Counsel for the Appellant:

      Ted Doebbler
          — Counsel at trial

      Alexander Bunin & Jani Maselli Wood
          — Counsel on appeal

Trial Judges:

      James Anderson
          ——Presiding judge

# Table of Contents

Statement Regarding Oral Argument ..................................................i

Identification of the Parties ............................................................ ii

Table of Contents .......................................................................... iii

Index of Authorities ...................................................................... vi

Statement of the Case .....................................................................1

Introductory Note............................................................................1

Statement of Facts ...........................................................................2

Summary of the Argument...............................................................4

Reply to Point One...........................................................................6

Because of the appellant's bizarre pre-trial filings and disruptive courtroom behavior, the trial court did not abuse its discretion in denying his efforts at self-representation.......................................... 6

I.    Factual Background: The appellant's pseudolegal filings and uncooperative behavior forced the trial court to remove him from the courtroom. ........................................................................ 6

    A.   The appellant's pre-trial filings............................................ 6

    B.   The *Faretta* hearing............................................................7

II.  Legal Background: The right to self-representation can be denied if a defendant is disruptive or is not competent to represent himself......................................................................................... 15

    A.   The right and its limits......................................................... 15

    B.   Standard of review ............................................................. 20

III.  Argument: This Court *could* affirm the trial court's ruling either on the basis that the appellant did not understand the proceedings well enough to represent himself or on the basis that the appellant was using his right to self-representation to obstruct trial proceedings. This Court *should* affirm on the second basis. .............. 21

    A.   Evidence that the appellant did not understand the proceedings ........................................................................ 22

    B.    Evidence that the appellant was attempting to use his right to self-representation to obstruct the proceedings ................................ 24

Reply to Point Two ............................................................................ 25

The appellant's use of sovereign-citizen tactics does not raise a bona fide doubt about his mental competence to stand trial. .......................... 25

    I.    Legal Background: Absent a request from a party, a trial court's decision not to hold a competency inquiry is an abuse of discretion only if, as a matter of law, the evidence created a "bona fide doubt" regarding a defendant's competence to stand trial. ............................... 26

    II.    Argument: The only evidence of incompetence the appellant points to are his sovereign-citizen tactics, but those are evidence of obstinateness, not incompetence. ................................................. 28

Reply to Point Three ........................................................................ 31

The appellant's point is based on a factual mistake. On the date the appellant was stopped, the offense of improper display of a license plate was punishable by a fine of between $5 and $200, thus counsel was not ineffective for failing to file a motion to suppress based on the fact that improper display of a license plate was not a criminal offense. 31

Reply to Point Four ........................................................................ 33

The trial court did not err in refusing to hold a hearing on the appellant's motion for new trial. The motion alleged that counsel was ineffective for failure to investigate the case and call witnesses, but the only uncalled witness mentioned in the motion was the appellant's mother, and her affidavit that she would say "good things" about the appellant was conclusory. ................................................................ 33

Reply to Point Five ........................................................................ 36

The question of fact that the appellant points out in his brief was not material to the determination of probable cause to search the appellant's car, thus the trial court did not err in refusing to give the jury a 38.23 instruction. ................................................................ 36

    I.    This argument was not presented to the trial court ..................... 37

    II.    The minor discrepancy in the testimony was immaterial to the legality of the appellant's detention or the search of the car. ............ 38

Conclusion ........................................................................ 40

Certificate of Compliance and Service........................................... 41

# Index of Authorities

**Cases**

*Alford v. State*
  367 S.W.3d 855 (Tex. App.—
  Houston [14th Dist.] 2012, pet. ref'd) .................................................................. 21

*Almanza v. State*
  686 S.W.2d 157 (Tex. Crim. App. 1985) .............................................................. 37

*Birdwell v. State*
  10 S.W.3d 74 (Tex. App.—
  Houston [14th Dist.] 1999, pet. ref'd) .................................................................. 17

*Buerger v. State*
  60 S.W.3d 358 (Tex. App.—
  Houston [14th Dist.] 2001, pet. ref'd) ...............................................................34, 35

*Chadwick v. State*
  309 S.W.3d 558 (Tex. Crim. App. 2010) ........................................... 20, 23, 30

*Collier v. State*
  959 S.W.2d 621 (Tex. Crim. App. 1997) .............................................................. 27

*Colon v. State*
  717 S.W.2d 474 (Tex. App.—
  San Antonio 1986, no pet.) ...................................................................................... 17

*Cunningham v. State*
  11 S.W.3d 436 (Tex. App.—
  Houston [14th Dist.] 2000, no pet.) ...................................................................... 39

*Ex parte Winton*
  837 S.W.2d 134 (Tex. Crim. App. 1992) .............................................................. 17

*Faretta v. California*
  422 U.S. 806, 807 (1975) .......................................................................................... 15

*Godinez v. Moran*
  509 U.S. 389 (1993) .................................................................................................... 16

*Goffney v. State*
  843 S.W.2d 583 (Tex. Crim. App. 1992) .............................................................. 16

*Hummel v. Com.*
  306 S.W.3d 48 (Ky. 2010) ...................................................... 18

*Indiana v. Edwards*
  554 U.S. 164 (2008) .......................................................... 16, 17, 30

*Johnson v. State*
  429 S.W.3d 13 (Tex. App.—
  Houston [14th Dist.] 2013, no pet.)................................... 27

*Johnson v. State*
  760 S.W.2d 277 (Tex. Crim. App. 1988) .......................... 16

*Jordan v. State*
  883 S.W.2d 664 (Tex. Crim. App. 1994) .......................... 33, 34

*Madden v. State*
  242 S.W.3d 504 (Tex. Crim. App. 2007) .......................... 37, 38

*Meads v. Meads*
  2012 ABQB 571 (CanLII)
  *available at* http://canlii.ca/t/fsvjq ............................... passim

*Moore v. State*
  999 S.W.2d 385 (Tex. Crim. App. 1999) .......................... 28

*Salahud-din v. State*
  206 S.W.3d 203, 207 (Tex. App.—
  Corpus Christi 2006, pet. ref'd) ...................................... 27

*Smith v. State*
  286 S.W.3d 333 (Tex. Crim. App. 2009). ......................... 33, 34

*Strickland v. Washington*
  466 U.S. 668 (1984) ........................................................... 34

*United States v. Brock*
  159 F.3d 1077 (7th Cir. 1998)........................................... 18

*United States v. Brunson*
  482 Fed. Appx. 811 (4th Cir. 2012).................................. 18

*United States v. Long*
  597 F.3d 720 (5th Cir. 2010)............................................. 18

*United States v. Mosley*
  607 F.3d 555 (8th Cir. 2010)............................................ 18, 19, 25

*Washington v. State*
  417 S.W.3d 713 (Tex. App.—
  Houston [14th Dist.] 2013, pet. ref'd) ............................................................ 35

## Statutes

TEX. CODE CRIM. PROC. art. 46B.003 ........................................................................ 26

TEX. CODE CRIM. PROC. art. 46B.004 ................................................................... 26, 27

TEX. TRANSP. CODE § 504.943 ................................................................................... 32

TEX. TRANSP. CODE § 504.948 (West Supp. 2014) ................................................. 32

## Other Authorities

Act of June 14, 2013, 83rd Leg. R.S., ch. 1135
  2013 Tex. Sess. Law Serv. 2708 ............................................................................. 32

CRACKING THE CODE (3rd ed. 2002) ......................................................................... 29

## Statement of the Case

The appellant was indicted for possession of between 1 and 4 grams of cocaine. (CR 13). The indictment alleged two prior felony convictions, with one of the felonies having been committed after the conviction for the other became final. (CR 13). A jury found him guilty as charged. (CR 121, 124). The appellant pled "not true" to both enhancement paragraphs, but the trial court found them true and assessed punishment at 45 years' confinement. (CR 124). The trial court certified the appellant's right of appeal, and the appellant filed a timely notice of appeal. (CR 124, 129).

## Introductory Note

This is a very simple case made complex only by the appellant's use of sovereign-citizen tactics at trial. If this Court is confused by the appellant's bizarre pre-trial filings[1] or courtroom discourse,[2] the State's

---

[1] *E.g.*, CR 40-45, which is titled "Affidavit of Marcus Jamez Lewis©, by Special Visitation." In this document the appellant states that he "owns the name Marcus Jamez Lewis© and the trade-name MARCUS JAMEZ LEWIS©." He then lists several people and entities (defense counsel, the foreman of the grand jury, an assistant district attorney, Harris County, the state of Texas) and specifies that he "neither granted [the people and entities] permission for using nor authorized … use of the name MARCUS JAMEZ LEWIS© also known by any and all derivatives and variations in the spelling of said name except 'Marcus Jamez Lewis', at any time without consideration for the use of said name."

1

appellate counsel recommends as a resource a Canadian case, *Meads v. Meads*, 2012 ABQB 571 (CanLII), *available at* http://canlii.ca/t/fsvjq (last viewed on August 5, 2015), which appears to be the best researched and most authoritative resource on these sorts of disruptive trial tactics. Comparing the appellant's actions at trial with the discussion in *Meads* makes clear that the appellant was not attempting to engage with the trial court but was instead seeking to undermine its authority and thwart any effort at an orderly trial.

### Statement of Facts

Houston Police Officers Krisopher Solis and Juan Diaz were on patrol when they observed a Chevy Impala with improperly displayed license plates. (3 RR 20). The front license plate was inside the car on the dashboard and the rear license plate was taped to the inside of the rear window. (3 RR 20, 70). The officers initiated a traffic stop. (3 RR 20).

As the Impala slowed down, the officers observed the driver and passenger engaged in furtive movements toward the center console and

---

[2] *E.g.,* 2 RR 7 (appellant: "I'm not representing myself. I'm representing myself as Paramount Security Interest Holder of all property collateral belonging to the defendant. I am the agent for Marcus Jamez Lewis.").

2

the door panels. (3 RR 21-22, 73). When the Impala stopped and the officers approached, Solis observed a rock of crack cocaine sitting on the passenger's lap. (3 RR 25). Solis asked him to step out of the car. (3 RR 26).

At that point Diaz asked the driver, the appellant, for his identification, but the appellant had no identification on him. (3 RR 74-75). The appellant became argumentative, so Diaz asked him to step out of the car. (3 RR 75). The appellant did not comply but instead made a furtive movement toward the center console, as if to hide something. (3 RR 75-76). Solis drew his TASER and ordered the appellant out of the car; the appellant complied. (3 RR 76).

After the appellant stepped out, Solis showed Diaz the rock of cocaine he had found on the passenger. (3 RR 78). Based on the drugs they had already found and the appellant's apparent attempt to hide something, Diaz began a search of the car for additional drugs. (3 RR 81). Diaz observed a pack of Newport cigarettes in the panel compartment of the driver's door. (3 RR 81). Diaz knew that cigarette boxes were common hiding places for narcotics. (3 RR 81-82). Diaz checked the box and discovered ten baggies of powder cocaine. (3 RR 81-82). A subsequent search of the vehicle revealed a CD case that

contained a 9mm handgun. (3 RR 47, 89). In the truck, police found a fireproof safe that contained the appellant's driver license. (3 RR 51, 89-90).

## Summary of the Argument

The appellant raises five points of error. In his first point of error, the appellant complains that the trial court erred in not letting him represent himself at trial. However, the appellant's pre-trial filings and courtroom behavior show that either he did not understand the proceedings well enough to represent himself or else he was engaged in an intentional effort to disrupt the trial. In either of those circumstances, the trial court was correct to deny his efforts at self-representation.

In his second point, the appellant claims that his sovereign-citizen tactics were a sign that he was incompetent to stand trial and the trial court erred by not having an inquiry on the matter. The State does not believe that the disruptive trial tactics used in this case are indicative of incompetence, but are instead signs of obstinateness that do not require a competence inquiry.

In his third point, the appellant claims that his trial counsel was ineffective for not filing a motion to suppress. However, the appellant's

belief that a motion to suppress would have been meritorious is based on a factual misunderstanding of the law.

In his fourth point, the appellant complains about the trial court's refusal to hold a hearing on his motion to for new trial. However, the only evidence supporting the appellant's motion was an affidavit from his mother stating that if she had been called as a witness she would have said "good things" about the appellant. This conclusory affidavit was an insufficient basis to require the trial court to hold a hearing on the appellant's motion.

In his fifth point, the appellant claims that the trial court erred in not instructing the jury regarding illegally obtained evidence. However, the conflict in the testimony that the appellant points to as creating a question of fact was immaterial to the legality of the search that uncovered his drugs, thus the trial court was not required to instruct the jury as the appellant claims.

**Reply to Point One**

**Because of the appellant's bizarre pre-trial filings and disruptive courtroom behavior, the trial court did not abuse its discretion in denying his efforts at self-representation.**

    I.    **Factual Background: The appellant's pseudolegal filings and uncooperative behavior forced the trial court to remove him from the courtroom.**

        **A.  The appellant's pre-trial filings**

In June 2014, three months before his trial, the appellant filed a document labeled "Motion to Dismiss Court Appointed Attorney; Waiver of the Right to Counsel; Right to Proceed Pro Se." (CR 47-50). In this document, the appellant asserted that, after ten months of representation, he had lost faith in his court-appointed attorney and wished to represent himself. (CR 47-59). There is no written order on this document, nor does there appear to have been any on-the-record hearing, but a month later the appellant filed a request for additional time in the jail's law library; the request stated that the appellant was representing himself pro se. (CR 66).

In August 2014, a month before his trial, the appellant filed a series of documents and affidavits that, taken together, show that for several months the appellant had been sending letters to a prosecutor. (*See* CR 71-100). These documents use the sort of pseudolegal

6

"commercial law" language used by sovereign-citizen litigants. (*See, e.g.* CR 90 ("Failure of Respondents to prove their claims or charges against the Undersigned within ten (10) days (or in the alternative cease all collection or enforcement actions against the Undersigned) shall constitute deliberate criminal actions and willful breach of & default of a bilateral contract (Affidavit of Agreement) formed knowingly, intentionally, and voluntarily & between the Undersigned and the Respondents."));  *see also Meads*, 2012 ABQB 571 at para 487-91 ("[Sovereign citizen] litigants will often claim to use foisted unilateral agreements to discharge an obligation or end a lawsuit.").

### B. The *Faretta* hearing

No other pre-trial documents from the appellant appear in the record from the period after the appellant filed his motion for self-representation. On the day when jury selection was scheduled to begin, the trial court advised that it had read the appellant's pre-trial motions and understood them to be an effort to represent himself. (2 RR 4). The trial court originally stated that it would allow the appellant to represent himself. (2 RR 4).

The trial court then began asking questions to ascertain whether the appellant's waiver of the right to counsel was made knowingly and intelligently. The first question regarded the appellant's educational background: "How far did you go in school?" (2 RR 4). The appellant replied: "First of all, I would like to be referred to as Paramount Security Interest Holder and Properties collateral belonging to the defendant." (2 RR 4-5). The trial court denied this request. After several unfruitful exchanges with the trial court, the appellant finally revealed that he had attended Houston Community College. (2 RR 5-6).

The trial court then asked whether the appellant was aware of the charges against him. The appellant replied: "Is there anybody in the courtroom who can present me with the original charging instrument?" (2 RR 6). The trial court pointed out that "[t]he lawyers had it for almost a year now," but offered to make a copy for the appellant. (2 RR 6). The appellant refused the offer and demanded to see "the original." (2 RR 6). The trial court refused to give the appellant the original indictment from the clerk's file. (2 RR 6).

The trial court announced that it would have the appellant's formerly appointed attorney act as standby counsel, then it continued to advise the appellant about self-representation. (2 RR 6). The trial court

8

noted that it had found the appellant's pre-trial filings "amusing." (2 RR 6). However, the trial court advised that it would not allow the appellant to use "this UCC stuff"[3] at trial. (2 RR 6).

The trial court advised the appellant that if he represented himself, he would be "held to the exact same standard of practice as a licensed attorney." (2 RR 7). The trial court asked if the appellant understood this, and he replied, "No, sir." (2 RR 7). The trial court then stated that the appellant could not represent himself because he "lack[ed] the basic understanding to represent himself." (2 RR 7). The appellant replied:

> What I understand, sir, is you keep saying "representing myself." I'm not representing myself. I'm representing myself as Paramount Security Interest Holder of all property collateral belonging to the defendant. I am the agent for Marcus Jamez Lewis.

(2 RR 7).

The trial court replied that the appellant "shows a lack of ability to understand the issues," and because of this the appellant could not

---

[3] Though it does not appear that the appellant explicitly cited the Uniform Commercial Code in the pre-trial motions that made it into the record, many sovereign-citizen tactics purport to be based on the UCC; the appellant wrote "UCC-1308 without prejudice" under his signature acknowledging the *Faretta* warnings and in post-conviction paperwork. (*See* CR 109, 129-130); *see also Meads*, 2012 ABQB 571 at para 150 (noting sovereign citizens' reliance on UCC, even in Canadian courts, and finding such tactics "baffling").

represent himself. (2 RR 7-8). The trial court told defense counsel to represent the appellant, to which the appellant replied: "I do not consent to be represented by anybody." (2 RR 8 ). The appellant stated that he understood that if he represented himself he would be held to the same standard as a lawyer. (2 RR 8).

The appellant asked the judge: "[S]ir, can you identify yourself, sir? I don't even know who you are." The judge identified himself: "Judge, first name, last name, Anderson." (2 RR 8). The appellant then asked if the clerk and an unknown woman could identify themselves, but the trial court replied "No" to both requests. (2 RR 8).

The trial court resumed admonishing the appellant as though he would be able to represent himself. (2 RR 8-9). The trial court explained again that if the appellant represented himself he would be held to the same standard as a lawyer, and the appellant again said he understood. (2 RR 9). The trial court noted on the record that the appellant had signed his "Fedora motion," which seems to be how the court reporter transcribed "*Faretta*," the seminal Supreme Court case on self-representation. (2 RR 9; CR 108-09 (*Faretta* warnings signed by appellant on day of jury selection)).

The trial court continued with admonishing the appellant regarding self-representation, with mixed results in terms of getting answers from the appellant. When the trial court advised the appellant again that "none of this UCC stuff is getting in front of this jury," there was a confused exchanged in which the appellant purported not to understand what the trial court was talking about. (2 RR 10-11).

The appellant asked about his "three-step administration process that I tried to handle with the district attorney[4] who I don't even know where she is." (2 RR 11). The trial court pointed out that the prosecutor was standing next to the appellant, after which the appellant replied, "Where? She didn't identify herself." (2 RR 11). After another exchange in which the appellant purported not to know that the prosecutor was the person trying the case against him, the trial court refocused the conversation: "I understand what you're doing here, sir. It's just nonsense." (2 RR 11).

The trial court returned to admonishing the appellant. The trial court advised that if the appellant represented himself he was waiving his right to effective counsel. (2 RR 12). The appellant replied: "I reserve

---

[4] Neither the State's appellate nor trial counsel knows what the appellant was referring to here. Presumably the appellant thought it had something to do with his pre-trial filings.

all of my legal rights." (2 RR 12). The trial court asked the question again, and this time the appellant stated that he waived his right to effective representation. (2 RR 12).

The trial court asked if the appellant was familiar with the Penal Code and knew the charges against him. (2 RR 12). The appellant said that he was familiar with the Penal Code, but he was not aware of the charges. (2 RR 12). The trial court repeated the charges the appellant faced and asked if he understood; the appellant said that he did not. (2 RR 12-13).

At this, the trial court announced that the appellant could not represent himself because he did not understand the charges. (2 RR 13). The court recessed for lunch.

Something appears to have happened during the lunch break, because when the record resumes the trial court announces that there is "a significant security team in court." (2 RR 13). The trial court advised the appellant that it wanted him to "join us for your trial," but that the appellant was free to remain in a holding cell if he preferred. (2 RR 14). The trial court asked if the appellant wanted to be part of the trial, to which the appellant replied: "For the record you keep referring to me as someone else. I am the Paramount Security Interest Holder and

12

collateral belonging to the defendant, Marcus Jamez Lewis. And the Court can refer to as Marcus."[5] (2 RR 14). The appellant advised that he did not consent to having defense counsel represent him, and that he had "never consented to be represented by anybody else other than Marcus." (2 RR 14-15).

The trial court then asked "Marcus" whether he wanted to sit in on the trial, and the appellant replied: "I do not consent." (2 RR 15). Defense counsel asked if the appellant wanted to represent himself, but the trial court advised that "that's not going to happen" because it had no intention "to spend two days referring to Mr. Marcus Lewis as Paramount Security Interest Holder in all Parties and properties of Marcus Jamez Lewis." (2 RR 15). The trial court characterized the appellant's name preference as "just silly." (2 RR 15).

The trial court advised the appellant that he could watch the trial so long as he was "non obstructive." (2 RR 15). The appellant continued to state that he did not consent to defense counsel representing him and asked whether anyone could "show me where I consented to voluntary waive my right to represent myself." (2 RR 16).

---

[5] This seems to be the appellant's take on the classic sovereign-citizen trope that each person is, in fact, two persons, one an actual person and the other a non-corporeal legal entity. *Meads* discusses this concept and its manifestations with some detail. *Meads*, 2012 ABQB 571 at paras 417-46.

The trial court again asked the appellant whether he wanted to observe and participate in the trial, to which the appellant replied: "I have issue with subject matter jurisdiction." (2 RR 17). The appellant then asked the trial court whether its name, "Judge," was "in your physical capacity or primatial capacity." (2 RR 17). The trial court said that was in its physical capacity. (2 RR 17). The appellant followed that up by asking, "So you're the judge of who and what?" (2 RR 17). The trial court replied, "You today, sir …" (2 RR 17). From this exchange, the trial court concluded that the appellant was "not going to participate in his trial." (2 RR 17). The appellant was then taken to a holding cell. (2 RR 18). The appellant was brought back at the beginning of voir dire but was eventually removed from the courtroom again after causing numerous disruptions. (2 RR 52).[6]

At some point that day, the trial court entered a written order denying the appellant's request to represent himself. (CR 109). The trial court made the following handwritten notation:

---

[6] When the guilt phase of the trial started the next day, the appellant resumed his sovereign-citizen talking points (*e.g.*, when the trial court asked whether he pled guilty or not guilty, the appellant replied, "Judge, there's the issue of subject matter jurisdiction."), so the trial court had him removed from the courtroom before the jury was brought out. (3 RR 5-9). Later, the appellant was able to disrupt the trial by shouting from the holding cell, which prompted the trial court to have him removed to a different holding cell. (3 RR 28-31).

[Defendant] is confrontational, obstructive and chooses to assert issues not relevant to this case. He insists on using the name "Paramount Security Interest Holder in all party Properties." He insists he is a sovereign state and not subject to any laws of this Country and the state has not filed a UCC lien — utter nonsense. No understanding of rules of evidence / relevancy [illegible].

(CR 109).

## II. Legal Background: The right to self-representation can be denied if a defendant is disruptive or is not competent to represent himself.

### A. The right and its limits

The Sixth and Fourteenth Amendments to the federal constitution give criminal defendants in state court a right to represent themselves at trial. *Faretta v. California*, 422 U.S. 806, 807 (1975). However, there are two limitations on this right that are relevant to this case.

First, because a defendant who represents himself gives up "many of the traditional benefits associated with the right to counsel" (such as the right to effective assistance of counsel), a defendant's decision to represent himself must be made "knowingly and intelligently." *Id.* at 835. While the case law does not require "formalistic questioning" of the defendant by the trial court, for a defendant to represent himself the record must establish that "he knows what he is doing and his choice is

made with open eyes." *Johnson v. State*, 760 S.W.2d 277, 278 (Tex. Crim. App. 1988) (plurality op.); *see Goffney v. State*, 843 S.W.2d 583, 585 (Tex. Crim. App. 1992).

In *Indiana v. Edwards*, 554 U.S. 164 (2008), the Supreme Court addressed the question of what level of competence was required for a defendant to intelligently and knowingly waive his right to counsel and represent himself. The state trial court in *Edwards* had found that the defendant was competent to stand trial, but not competent enough to represent himself. *Edwards*, 554 U.S. 167. The state appellate courts reversed the conviction, holding that the level of competence to represent oneself was no higher than the level required to stand trial. *Id*. at 169.

The Supreme Court reversed that decision. It noted that the test for competence to stand trial involves asking whether the defendant can assist counsel, which is a significantly different level of competence than being able to be one's own counsel.[7] *Id*. at 174-75. Ultimately, the court

---

[7] In his brief, the appellant points out that the level of competence required for waiving the right to counsel is the same, minimal requirement as the level of competence to stand trial. (Appellant's Brief at 23-24); *see Godinez v. Moran*, 509 U.S. 389, 399 (1993). However, the Supreme Court in *Edwards* distinguished *Godinez*, noting that its holding related only to the level of competence required to waive the right to counsel when entering a plea of guilty. *Edwards*, 554 U.S. at 173. While the appellant's statement of the law here is technically accurate, it is off point. The

concluded that, while not required to do so by the Constitution, a state court could apply a higher standard of competence for self-representation than is required to stand trial. *Id*. at 177-78. That is, if a defendant is competent to stand trial but the trial court found that his level of competence was low enough that allowing him to represent himself would turn the trial into a farce, a state trial court could force the defendant to be represented by counsel. *Id*. at 175-77.

The second relevant limitation on the right to self-representation is that it cannot be used "to abuse the dignity of the courtroom." *Faretta*, 422 U.S. at 835 n.46. While the State can find no Texas cases upholding a trial court's decision to deny self-representation based on disruptive courtroom behavior,[8] federal courts and courts in others states have held that a trial court may force counsel upon disruptive pro se defendants. *See United States v. Brock*, 159 F.3d 1077, 1080 (7th Cir.

---

appellant sought not only to waive the right to counsel, he sought to conduct a trial while acting as his own counsel. It is his competence to do the latter that is at issue.

[8] Texas courts have not disputed that this is a viable basis for denying the right of self-representation, but in the particular circumstances of the cases that have been appealed, appellate courts have held that trial courts' decisions on this basis were not supported by the record. *See, e.g., Birdwell v. State*, 10 S.W.3d 74, 78 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd); *Ex parte Winton*, 837 S.W.2d 134, 135 (Tex. Crim. App. 1992); *Colon v. State*, 717 S.W.2d 474, 475 (Tex. App.—San Antonio 1986, no pet.).

1998) (defendant effectively waived right to self-representation through disruptive, non-cooperative behavior); *United States v. Long*, 597 F.3d 720, 729 (5th Cir. 2010) (disruptive behavior combined with vacillating response to judicial questioning constituted waiver of right to self-representation);[9] *United States v. Brunson*, 482 Fed. Appx. 811, 818 (4th Cir. 2012) (upholding trial court's decision to appoint counsel for previously pro se defendants after defendants "had filed numerous nonsensical *pro se* motions" and asserted such arguments at hearings); *see also Hummel v. Com.*, 306 S.W.3d 48, 53 (Ky. 2010) (stating "the rule in other jurisdictions is that a request for self-representation may be properly denied if the defendant is unable or unwilling to act with decorum in court as he conducts his own defense and instead seeks only to disrupt or delay proceedings," and collecting sources).

The most on-point case is *United States v. Mosley*, 607 F.3d 555 (8th Cir. 2010). Mosley was charged with being a felon in possession of a firearm and the trial court originally allowed him to represent himself.

---

[9] Of note, Long displayed certain indicia of being a sovereign-citizen litigant. When the trial court asked Long whether he wanted to represent himself, Long replied: "For the record, Your Honor, your offer of contract is accepted for value and returned with consideration for discharge, settlement, and closure." *Long*, 497 F.3d at 723; *see Meads*, 2012 ABQB 571 at para 223, 249 (identifying similar phrases as being strong indication of a sovereign-citizen litigant).

*Mosley*, 607 F.3d at 557. Mosley filed a pre-trial motion and made courtroom statements indicative of being a sovereign-citizen litigant. *Ibid*. ("I am a live and living, flesh and blood breathing man, who is a secured party who is sovereign. I am not a corporation.").[10] At one hearing Mosley "read from a prepared statement making claims that were unrelated to his case." *Ibid.* At other hearings, when the trial court would attempt to engage him about self-representation Mosely was "completely unresponsive to the Court." *Id*. at 558. Sometime during this process the trial court appointed counsel for Mosley, who continued representing him through trial over Moseley's objection. *Ibid*.[11]

On appeal, Mosley's only complaint was the denial of his right to self-representation. The Eighth Circuit held that Mosley, through his "obstreperous conduct" had forfeited his right to proceed pro se. *Id.* at 559. The appellate court noted that the trial court's decision to terminate Mosley's self-representation was based on its belief that

---

[10] *See Meads*, 2012 ABQB 571 at para 221 (stating that documents filed by sovereign-citizen litigants "frequently refer to the litigant as having a particular status or characteristic," and listing several possibilities, including "a 'flesh and blood man'" and that "the litigant is a person or a natural person, but not a corporation," or that "the litigant is … [a] 'secured party.'").

[11] Like the appellant, Mosley continued being disruptive during jury selection and trial, at one point interrupting trial to advise the court that the name on the indictment was not his name but that of a corporation. *Mosley*, 607 F.3d at 559.

either Mosley did not understand the proceedings or that he was not willing to participate in them. *Id*. at 559. This belief, the trial court noted, was based on Mosley's refusal to answer questions and participate in proceedings. *Ibid*. Because this was well supported by the record, the trial court did not err. *Ibid*.

### B. Standard of review

A ruling on a defendant's motion for self-representation is a mixed question of law and fact that turns on an evaluation of credibility and demeanor. *Chadwick v. State*, 309 S.W.3d 558, 561 (Tex. Crim. App. 2010). As such, the trial court's ruling is reviewed for an abuse of discretion. *Ibid*. On review, appellate courts afford almost total deference to the trial court when the resolution turns on an evaluation of credibility and demeanor. *Ibid*. An appellate court is to view the evidence in the light most favorable to the trial court's ruling. *Ibid*. If the trial court failed to make necessary findings, appellate courts are to imply any findings that are supported by the evidence and necessary to support the trial court's ruling. *Ibid*

If a trial court abuses its discretion in denying a motion for self-representation, the error is not subject to harm analysis and requires

reversal. *Alford v. State*, 367 S.W.3d 855, 865 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd).

**III.** **Argument: This Court *could* affirm the trial court's ruling either on the basis that the appellant did not understand the proceedings well enough to represent himself or on the basis that the appellant was using his right to self-representation to obstruct trial proceedings. This Court *should* affirm on the second basis.**

The record in this case could support findings that the appellant did not understand the charges against, and that he was using his right to self-representation to disrupt the trial. In *Mosely*, the Eighth Circuit responded to a sovereign-citizen litigant by affirming the trial court's ruling on both grounds. *Mosley*, 607 F.3d at 559.

However, that sort of holding does not get at the core of what occurred in this case. To the degree that the appellant gave vacillating answers as to whether he understood the proceedings, he did so as part of his general effort to disrupt and disrespect the proceedings. A finding that a defendant is competent to stand trial but incompetent to represent himself at trial, as the courts made in *Edwards* and *Chadwick*, should be reserved for cases in which there is solid evidence of an actual mental disorder. The appellant had no mental disorder. (*See* CR 24-

29).[12] He was using the right of self-representation to abuse the system. He was not insane, he was obstreperous. This Court should not dignify the appellant's conduct by attributing it to a legitimate cause. Instead, this Court should affirm the trial court's explicit finding that the appellant was being "obstructive" and therefore waived his right to self-representation.

## A. Evidence that the appellant did not understand the proceedings

The appellant vacillated in his answers to the trial court's questioning, sometimes indicating that he understood the proceedings and what self-representation entailed (*see* 2 RR 9), sometimes indicating that he had no understanding whatsoever of what was occurring (*see* 2 RR 6 (did not understand charges), 7 (did not understand being held to same standard as attorney), 11 (seemed to believe there was a "three step administration process" to resolve charges, then seemed not to know that prosecutor was trying the case against him), 12-13 (repeatedly disavowed knowing of charges against

---

[12] From the appellant's competency examination: "Findings on this competency examination indicated that the [appellant] exhibited rational thought and calm/cooperative demeanor with the capacity to communicate in a reasonable and rational manner." (CR 28).

22

him)), and sometimes he answered the trial court with nonsense (*see, e.g.,* 4-5).

At one point, the trial court found that the appellant "ha[d] no perception of what he's doing down here." (2 RR 7). Later in the hearing, the final straw for the trial court was when the appellant repeatedly stated that he did not understand what he was charged with. (2 RR 12-13). Whether the appellant was being sincere in his claims of ignorance or whether he was using false claims of ignorance to be obstructive, the record supports the trial court's explicit and implicit findings that the appellant did not understand the nature of the charges against him.

In abuse-of-discretion review, this Court defers to a trial court's findings if there is conflicting evidence on the matter, particularly where those findings are based on credibility and demeanor. *Chadwick*, 309 S.W.3d at 561. While the appellant provided a couple of answers indicating that he understood the nature of the proceedings, the bulk of his answers (and his bizarre pre-trial filings) indicated, as the trial court found, a complete lack of perception of what was going on. Accordingly, this Court could affirm the trial court on the basis that the appellant did not have sufficient understanding of the proceedings to conduct a trial.

## B. Evidence that the appellant was attempting to use his right to self-representation to obstruct the proceedings

The appellant's interactions with the trial court during the *Faretta* hearing consisted largely of inappropriate answers to simple questions. After the *Faretta* hearing, the appellant's conduct became even more disruptive, indicating that the trial court was correct in its belief that the appellant's aim was to disrupt the proceedings. (*See* 3 RR 6 (when asked to plead guilty or not guilty, appellant brought up "the issue of subject matter jurisdiction"), 8-9 (when presented with last-minute plea offer, appellant responded by requesting trial court refer to him as "Marcus" instead of "Mr. Lewis," and then questioned whether "anyone in this courtroom … can present me with an original charging instrument or a claim against me")).

In his brief, the appellant asserts that at the *Faretta* hearing he "was cooperative and answered all of the trial court's questions...." (Appellant's Brief at 34). The appellant further asserts that "[t]here is no evidence in the record to suggest that [his] behavior was a deliberate attempt to obstruct the trial court proceedings." The State respectfully disagrees with these characterizations, as did the trial court. Based on the appellant's courtroom demeanor, the trial court found that the

24

appellant was "confrontational" and "obstructive." (CR 109). Considering the nature of the answers the appellant provided, along with his bizarre pre-trial filing (*see* CR 71-99 (lengthy handwritten documents, the gist of which is that the prosecutor's failure to respond to appellant's claims with sworn affidavit would constitute "default" and acceptance of appellant's claims)), the trial court was well within its discretion to conclude, based on the appellant's demeanor, that the appellant intended to use his right to self-representation to obstruct the proceedings. *See Mosley*, 607 F.3d at 558-59. Therefore, this Court should reject the appellant's first point.

## Reply to Point Two

**The appellant's use of sovereign-citizen tactics does not raise a bona fide doubt about his mental competence to stand trial.**

In his second point of error, the appellant argues that his disruptive sovereign-citizen tactics were bizarre enough that they should have prompted the trial court to make inquiry into his competence to stand trial. The appellant is arguing that if he did not have an understanding of the proceedings against him to allow him to represent himself, then he may not have had a sufficient understanding

of the proceedings to go to trial. This point illustrates why it is important that this Court address the appellant's first point by affirming the trial court's finding that the appellant was too disruptive to represent himself.

I. **Legal Background: Absent a request from a party, a trial court's decision not to hold a competency inquiry is an abuse of discretion only if, as a matter of law, the evidence created a "bona fide doubt" regarding a defendant's competence to stand trial.**

A defendant is not competent to stand trial if he does not have sufficient present ability to consult with his attorney with a reasonable degree of rational understanding, or if he does not have a rational and factual understanding of the proceedings against him. TEX. CODE CRIM. PROC. art. 46B.003(a). Either party may suggest, or the trial court may suggest on its own motion, that the defendant may be incompetent to stand trial. TEX. CODE CRIM. PROC. art. 46B.004(a) . If evidence suggesting that the defendant may be incompetent to stand trial comes to the attention of the trial court, the court must suggest that the defendant may be incompetent. *Id.* at 46B.004(b). Upon such a suggestion, the trial court must determine by informal inquiry whether there is some evidence that would support a finding that the defendant may be

26

incompetent. *Id*. at 46B.004(c). If there is such evidence, the trial court must stay the proceedings in order to have the defendant examined. Tᴇx. Cᴏᴅᴇ Cʀɪᴍ. Pʀᴏᴄ. art. 46B.005(a).

If a trial court does not conduct a competency inquiry but, on appeal, a defendant suggests that one was appropriate, an appellate court reviews the trial court's actions (or lack thereof) for an abuse of discretion. *Salahud-din v. State*, 206 S.W.3d 203, 207 (Tex. App.—Corpus Christi 2006, pet. ref'd). "Evidence sufficient to prompt a competency hearing or inquiry must raise a 'bona fide doubt' in the mind of the trial judge as to the defendant's competency to stand trial; a bona fide doubt exists if the evidence indicates recent severe mental illness, or at least moderate mental retardation, or truly bizarre acts by the defendant." *Id.* at 208 (citing *Collier v. State*, 959 S.W.2d 621, 625 (Tex. Crim. App. 1997)).

However, bizarre, obscene, or disruptive comments by a defendant during court proceedings do not necessarily constitute evidence supporting a finding of incompetency. *Johnson v. State*, 429 S.W.3d 13, 18 (Tex. App.—Houston [14th Dist.] 2013, no pet.). "If such actions were [necessarily] probative of incompetence, one could effectively avoid

27

criminal justice through immature behavior." *Moore v. State*, 999 S.W.2d 385, 395 (Tex. Crim. App. 1999).

A defendant's obstinate refusal to work with his trial counsel is not evidence that he is incompetent to stand trial. *Turner v. State*, 422 S.W.3d 676, 691 (Tex. Crim. App. 2013). Such obstinateness is only indicative of a lack of competence if there is evidence showing that it is the result of a mental illness.

## II. Argument: The only evidence of incompetence the appellant points to are his sovereign-citizen tactics, but those are evidence of obstinateness, not incompetence.

Very early in the proceedings, defense counsel presented the trial court with a suggestion that the appellant was incompetent, and that, specifically, "he does not recall why he is in custody." (CR 21). The court ordered a psychological evaluation, and the psychologist found that the appellant understood the proceedings, understood why he was in jail, and was capable of assisting his counsel. (CR 24-29). Nothing in the record suggests that anyone questioned the appellant's competency at any other point in the proceedings.

On appeal, the appellant points to his bizarre pre-trial filings and courtroom discourse as evidence that he was incompetent to stand trial.

(Appellant's Brief at 38-41). But the appellant's sovereign-citizen tactics were not the result of mental illness, they were plainly the result a conscious plan to disrupt his trial. As *Meads* makes clear, sovereign-citizen tactics are not the result of insane individuals making delusional filings, they are the result of programs that are sold and marketed by gurus to individuals who believe they can use certain tactics skirt their legal obligations to society. *Meads*, 2012 ABQB 571 at paras 81-86 (discussing how sovereign citizen tactics "appear to be developed in social groups"). Indeed, as bizarre as the appellant's pre-trial filings might seem, the State's appellant counsel was able to find a template for one these filings with a simple google search. *Compare* CR 40-44 *to* CRACKING THE CODE, 310-14 (3rd ed. 2002) (free preview available from Google at https://goo.gl/5rW6zo).[13]

In his brief, the appellant points to the trial court's determination that his understanding of procedure was not sufficient to allow him to represent himself. (Appellant's Brief at 40-41). At the end of the *Faretta*

---

[13] This book, which seems to be by an anonymous author, states that its purpose is to help people avoid ordinary legal obligations. The preface of the book describes its purpose as "showing anyone how to successfully withstand and nullify unsolicited demands for payment/performance from attorneys, banks, judges, clerks of court, police, taxmen, and government agents (and anyone else who would casually and unjustly damage one's life) and cease being muscled into 'doing business' with such parties against his will." CRACKING THE CODE, xix.

hearing, the trial court found that the appellant "showed a lack of understanding of what he's charged with and procedures of the Court." (2 RR 13). The trial court continued: "I don't think for a second that he can represent himself...." (2 RR 13).

This finding by the trial court, by its terms, related to the appellant's ability to represent himself as counsel, not his competence to stand trial. *See Indiana v. Edwards*, 554 U.S. 164, 173, 176-78 (2008) (noting distinction between those two types of competence). As the holding in *Edwards* makes clear, a defendant can be competent to stand trial but not competent to represent himself as counsel. *Id*. at 177-79; *see Chadwick* 309 S.W.3d at 563 (affirming court of appeals's conclusion that trial court did not abuse discretion in finding defendant was competent to stand trial but incompetent to represent himself). The trial court in this case observed the appellant's demeanor in the courtroom and came to the conclusion that it was only his competence to represent himself that was at issue.

The appellant was not incompetent to stand trial, he merely subscribed to some peculiar pseudolegal theories and sought to put those theories into action. Allowing a competent defendant with no mental illness to grant himself the protections afforded to the

30

legitimately incompetent by consciously adopting a disruptive trial strategy would make an utter mockery of the system. The appellant's conduct was an effort to "avoid criminal justice through immature behavior." *See Moore*, 995 S.W.2d at 395. This Court should thwart that effort by denying the appellant's second point.

## Reply to Point Three

**The appellant's point is based on a factual mistake. On the date the appellant was stopped, the offense of improper display of a license plate was punishable by a fine of between $5 and $200, thus counsel was not ineffective for failing to file a motion to suppress based on the fact that improper display of a license plate was not a criminal offense.**

The appellant's third point is quite long, but it can be addressed quite briefly because it is based on a factual mistake. In his third point, the appellant argues that his trial counsel was ineffective because trial counsel did not file a motion to suppress the evidence in this case. The appellant asserts that the police stop that led to his arrest was illegal because at that time there was no statutory penalty attached to the failure to properly display a license plate, meaning that it was not a criminal offense for which an officer could lawfully stop a vehicle. (*See* Appellant's Brief at 44-60). The State does not substantially disagree

31

with most of the appellant's legal points, and were it not for a factual error his argument might well have merit.

However, at the time of the stop the legislature *had* assigned a penalty to the failure to properly display license plates, meaning that it was a criminal offense and the officers' stop of the appellant was lawful. In 2013, apparently realizing that the prior legislature had accidentally repealed the penalty for failure to properly display license plates, the 83rd Legislature enacted Transportation Code § 504.948, which establishes that the penalty for violating any provision of Chapter 504 for which no other penalty is specified is a fine of between $5 and $200. TEX. TRANSP. CODE § 504.948 (West Supp. 2014). The enacting legislation made this provision effective immediately upon approval of the legislation, which occurred on June 14, 2013. Act of June 14, 2013, 83rd Leg. R.S., ch. 1135 §§ 84, 144, 2013 Tex. Sess. Law Serv. 2708, 2724, 2739-40. The stop in this case occurred on August 15, 2013. (3 RR 17). The proper display of license plates is a requirement imposed in Chapter 504 of the Transportation Code. *See* TEX. TRANSP. CODE § 504.943. Therefore, Section 504.948 applied to it. Trial counsel was not ineffective for not raising this matter in a motion to suppress, thus this Court should reject the appellant's third point.

32

**Reply to Point Four**

**The trial court did not err in refusing to hold a hearing on the appellant's motion for new trial. The motion alleged that counsel was ineffective for failure to investigate the case and call witnesses, but the only uncalled witness mentioned in the motion was the appellant's mother, and her affidavit that she would say "good things" about the appellant was conclusory.**

The appellant filed a timely motion for new trial alleging that trial counsel was ineffective for failing to investigate the case and call witnesses in the punishment phase. (CR 149-160). The motion was presented to the trial court, but the trial court denied the appellant's request for a hearing on the motion. (CR 163). In his fourth point of error, the appellant claims that this was error. (Appellant's Brief at 61-64).

The denial of a defendant's request for hearing on a motion for new trial is reviewed for an abuse of discretion. *Smith v. State*, 286 S.W.3d 333, 339 (Tex. Crim. App. 2009). A defendant is entitled to a hearing on his motion for new trial so long as his motion asserts, and properly supports, reasonable grounds for relief that are not determinable from the record. *Jordan v. State*, 883 S.W.2d 664, 665 (Tex. Crim. App. 1994). Appellate review of a trial court's decision to deny a hearing on a motion for new trial is limited to the trial court's

33

determination of whether the defendant raised grounds that (1) are undeterminable from the record and (2) could entitle the defendant to relief. *Smith*, 286 S.W.3d at 340.

To prevail on a motion for new trial based on a claim of ineffective assistance, a defendant must show that his trial counsel's performance was deficient, and that this deficiency prejudiced the defendant. *Ibid*. (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prove prejudice, a defendant must show that there is "a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different." *Ibid*. (quoting *Strickland*, 446 U.S at 694). To be entitled to a hearing on motion for new trial that is based on a claim of ineffective assistance, a defendant must allege sufficient facts from which the trial court could reasonably conclude that the defendant could meet both parts of the *Strickland* test. *Id*. at 341. Affidavits that are conclusory in nature and unsupported by facts are not sufficient to put the trial court on notice that reasonable grounds for relief exist. *Buerger v. State*, 60 S.W.3d 358, 362 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd); *see Jordan v. State*, 883 S.W.2d 664, 665 (Tex. Crim. App. 1994).

Regarding the claim that counsel was ineffective for failing to conduct an investigation, the appellant produced no evidence at the motion for new trial or on appeal regarding what an effective investigation would have uncovered. Thus the appellant failed to make the required showing that this was a viable basis for a new trial, and the trial court did not abuse its discretion in not holding a hearing on this ground. *See Washington v. State*, 417 S.W.3d 713, 725 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd).

Regarding the allegation that trial counsel was ineffective for failing to call a witness, the only witness identified in the appellant's filings is his mother. Attached to the motion was an affidavit from the appellant's mother stating that she was available to testify, and if called she "would have told the jury good things about [the appellant]." (CR 173). The affidavit does not state what "good things" the appellant's mother would have testified about, thus it is a conclusory affidavit that did not apprise the trial court of a basis to believe the appellant could meet the *Strickland* standard. *See Buerger*, 60 S.W.3d at 363 (trial court did not err in denying hearing on motion for new trial that was supported only be conclusory affidavit). This Court should reject the

appellant's fourth point because he failed to submit sufficient affidavit evidence to justify a hearing on his motion for new trial.

**Reply to Point Five**

**The question of fact that the appellant points out in his brief was not material to the determination of probable cause to search the appellant's car, thus the trial court did not err in refusing to give the jury a 38.23 instruction.**

At trial, both of the officers testified that they observed the appellant and his passenger make furtive movements after the officers activated their emergency lights to initiate a traffic stop. (3 RR 21-22, 73). Officer Solis characterized the furtive movements in terms of the driver making movements toward the door and center console, and the passenger making movements toward the glove compartment. (3 RR 22, 56). Officer Diaz characterized the movements by noting that he saw "[b]oth heads in the vehicle ... started kind of ducking to the side, leaning forward ..." (3 RR 73). On cross examination, Diaz said that he did not see either the driver or passenger "do anything" because during the pursuit he could only see them "from the shoulders up." (3 RR 93).

In his fifth point of error, the appellant asserts that there is a "direct conflict between the two officers' testimony" and that this

conflict justified submitting to the jury an instruction on illegally obtained evidence. (Appellant's Brief at 65-72).

## I. This argument was not presented to the trial court

At trial, the appellant requested that the jury be charged on illegally obtained evidence, though it was on an entirely different basis: Trial counsel requested the instruction because he did not believe there was probable cause for the search at all. (4 RR 5-11). At one point, the trial court treated trial counsel's request as a motion to suppress. (4 RR 10 ("I am not going to suppress the discovery of the substance in this case)).[14] At no point did trial counsel point out any question of fact to the trial court. Thus, the charge error that the appellant is alleging on appeal should be reviewed only for "egregious harm" under *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1985). *Madden v. State*, 242 S.W.3d 504, 513 (Tex. Crim. App. 2007) (where 38.23 instruction is requested on one basis in trial court but appellate argument alleges different basis for 38.23 instruction, *Almanza's* "egregious harm" standard applies).

---

[14] Defense counsel had made a motion to suppress earlier, but the trial court advised that he would carry the motion until the end of the State's case. (3 RR 77).

**II.    The minor discrepancy in the testimony was immaterial to the legality of the appellant's detention or the search of the car.**

Not every question of fact requires the trial court to instruct the jury on illegally obtained evidence. To obtain a jury instruction under Article 38.23(a), the disputed fact must be one that affects the determination of the legal issue. *Madden*, 242 S.W.3d at 517.

In this case, the differences between the officers' testimony that the appellant points to is extremely marginal. Both officers testified that they saw both occupants moving around in a manner that caused them to believe the occupants may have been hiding something. (3 RR 21-22, 3 RR 73-76). The only difference is that one officer believed that he could tell that the passenger was reaching into the glove compartment, but the other officer did not have that belief and characterized the movements more generally.

But probable cause to search the car did not hinge on whether the passenger reached into the glove compartment (as Solis said) or whether the passenger was making generalized furtive movements and "leaning forward" (as Diaz said). (3 RR 79). At the time that Diaz searched the car, he had several clues that there was contraband inside:

- After officers tried to initiate a traffic stop, the driver continued driving for about 1/5 of a mile as both occupants made furtive movements as though to hide something. (3 RR 73).

- Once the car was stopped, the passenger was found with what appeared to be crack cocaine on his lap. (3 RR 25).

- The appellant, the driver, became agitated when asked to produce identification. (3 RR 74-75).

- When asked to step out of the car, the appellant made a "quick movement" toward the center console. (3 RR 75).

These factor gave Diaz probable cause to believe that there was additional contraband in the vehicle, thus the search was lawful. *See Cunningham v. State*, 11 S.W.3d 436, 440 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (where officer observed driver make furtive gestures when officer initiated traffic stop, and then officer observed marihuana residue in car, officer had probable cause to search for additional contraband). Whether the passenger reached into the glove compartment was immaterial, thus the trial court was correct not to instruct the jury on Article 38.23. This Court should overrule the appellant's fifth point.

## Conclusion

The State respectfully submits that all things are regular and the judgment of the trial court should be affirmed.

**DEVON ANDERSON**
District Attorney
Harris County, Texas


/s/ C.A. Morgan
**CLINTON A. MORGAN**
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas 77002
713.755.5826
Texas Bar No. 24071454

## Certificate of Compliance and Service

I certify that, according to Microsoft Word's word counting function, the portion of this brief for which Rule of Appellate Procedure 9.4(i)(1) requires a word count contains 8,541 words.

I also certify that I have requested that efile.txcourts.gov electronically serve a copy of this brief to:

Jani Maselli Wood
jani.maselli@pdo.hctx.net

/s/ C.A. Morgan
**CLINTON A. MORGAN**
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas 77002-1923
(713) 755-5826
Texas Bar No. 24071454

Date: August 5, 2015